## YEATMAN, WOODS & CO. *v.* JAMES ERWIN.

14  149
50  754

Where the seizing creditor becomes the purchaser of property at Sheriff's sale, retaining in his hands part of the price to pay a prior special mortgage on the property, which mortgage was afterwards discharged by the debtor himself—*Held* : That the seizing creditor, having a privilege on the proceeds of the sale, had a right to apply the amount thus remaining in his hands, to the unsatisfied balance of his own debt.

The purchaser, who is allowed to retain in his hands the amount of prior special mortgages, as part of the price, is bound for the interest accumulated on such mortgage debts after the sale.

APPEAL from the Fourth District Court of New Orleans, *Price,* J.

*L. M. Day,* for plaintiffs.  *Durant & Hornor,* for defendant and appellant.

MERRICK, C. J.  The plaintiffs, in 1847, recovered judgment against *Erwin,* the defendant, for $6,480 18 and interest.  In 1850, they issued an *alias fi. fa.,* on which they caused real estate of the defendant to be sold to the extent of $23,800, they becoming the purchasers for cash.  The sale was made April 22d, 1850.

There were several anterior special mortgages in judgment, which the Sheriff authorized the plaintiffs, the purchasers, to retain in their hands.  They paid the costs, $197 50.  They retained $9,414 93, the amount of a judgment in favor of the Bank of Kentucky, to which they were subrogated; also, a judgment in favor of the Bank of Louisiana, (out of which the present controversy arises,) amounting to $5,668 73; and also a judgment in favor of the Union Bank for $5,854 60, to which they were subrogated.

These sums being deducted, left only $2,664 24, to be applied to plaintiff's judgment.

The debt to the Bank of Louisiana was suffered to remain unpaid until the 2d day of April, 1852, when it was satisfied by the defendant, *Erwin,* or by the sale of his property, and *not by Yeatman, Woods & Co.*  This payment released the amount of the price retained by plaintiffs to pay the Bank of Louisiana.

The present proceeding is a rule taken by *Charles Fonda,* as curator of the *Succession of James Erwin,* upon the plaintiffs, to show cause why they should not pay over to him the $5,668 73, retained to pay the Bank of Louisiana.

There was judgment in favor of *Yeatman, Woods & Co.,* and *Fonda* appeals.

He contends, in this court, that inasmuch as the application of that portion of the price retained in the hands of the purchasers to pay the mortgage of the Bank of Louisiana, would overpay the remainder of the judgment of *Yeatman, Woods & Co.,* and leave a surplus of $523 57, he is entitled to recover that sum even if the whole amount set apart by the Sheriff to pay the bank judgment, should not be held subject to the control of the curator.

We think it is quite clear that the seizure and sale of the property of *Erwin*, under their execution and judicial mortgage, gave *Yeatman, Woods & Co.* a privilege upon the proceeds of the sale. And this they would have had, though some third person had been the purchaser of the property. Their right is not the less valid because they, themselves, became the purchasers. When, therefore, so much of the price in their hands, as had been retained to pay the judgment in favor of the Bank of Louisiana, was released from such destination by the payment of the judgment by the sale of other effects of *Erwin, Yeatman, Woods & Co.* might well insist upon the application of that portion of the price in their hands to their debt ; for the seizure had given them a privilege, and as between *Erwin* and themselves, he might also, as remarked by the District Judge, have been repelled by the plea of compensation.

It being conceded, then, that the plaintiffs, *Yeatman, Woods & Co.*, had the right to apply the amount retained by them to pay the judgment of the Bank of Louisiana, to their own debt, the next question is, as of what time it must be applied ? for the Sheriff's sale was made, as we have already observed, on the 22d of April, 1850, and the judgment of the bank was not released until April 2d, 1852, almost two years afterwards.

If applied as of the day of sale, the surplus in the hands of *Yeatman, Woods & Co.* would be about the amount claimed, viz, $515 21. If applied on the day the bank judgment was extinguished, (no interest being allowed on the amount retained,) there would be nothing due the curator, as it would not pay the interest which had accumulated on the judgment of *Yeatman, Wood & Co.*, between the sale and the 2d day of April, 1852. How, then, ought the matter to be adjusted ?

We think that as the amount retained to pay the bank judgment was so far due the bank, as to be subject to its demand in the hands of *Yeatman, Woods & Co.*, and as the property even might have been re-sold to pay the same under the older bank mortgage, the application of this sum to the plaintiffs' judgment must be made as of the 2d day of April, 1852 ; the day on which the debt was extinguished.

But the property was of the kind which produces fruits, and it would be unjust that plaintiffs should retain the price in their hands and not pay interest, whilst their judgment, to pay which the property was sold, was bearing interest.

It appears to us, that the Articles of the Code of Practice which authorize the purchaser to retain in his hands the amount of the prior special mortgages and privileges, imply that the purchaser himself, like the property which he has bought, must become responsible and bound for the interest which may accumulate on such mortgages after such sale. Otherwise it would be to the advantage of the purchaser to delay the payment of the portion of the price left in his hands as long as possible, and the debtor would be deprived of his property, while interest would be constantly accumulating against him. C. P. 683, 706.

The purchaser, in the language of the Article cited, is authorized to retain in his hands, out of the price, the amount required to satisfy the privileged debts and special mortgages. If he delays payment, the accumulations of interest on these privileged debts and special mortgages must be at his own cost and charge, for the property is bound for the same, and he can have no action against the debtor to recover the interest which he appears to assume with the principle debt.

If we apply these principles to the present case, the interest on the bank judg-

ment would somewhat exceed the interest on the plaintiffs' judgment, and there would still be as much due on the 2d day of April, 1852, as there would have been if the calculation and application of the money had been made, as of April 22, 1850, viz, $515 21. And for this sum the plaintiff must have judgment. See 10 Rob. 65 ; and *Perry* v. *Holloway*, 10 Rob. 107.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be avoided and reversed ; and that the said *Charles Fonda*, in his said capacity of curator, do recover of said *Yeatman, Woods & Co.*, the sum of five hundred and fifteen dollars and twenty-one cents, with legal interest thereon from the second day of April, 1852, until paid ; and that said *Yeatman, Woods & Co.* pay the costs of both courts.