## SIMMONS *v.* SAUL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 1585. Submitted January 9, 1891. — Decided March 2, 1891.

The constitutional provision that full faith and credit shall be given in each State to the judicial proceedings of other States does not preclude inquiry into the jurisdiction of the court in which a judgment is rendered over the subject matter or the parties affected by it, nor into the facts necessary to give such jurisdiction.

In 1872 parish courts in Louisiana were vested with original and exclusive jurisdiction over the administration of vacant and intestate successions.

The general principles of probate jurisdiction and practice as settled by a long series of decisions in the State courts and in the courts of the United States, are applicable to the powers and proceedings of the parish courts of Louisiana.

The order of the parish court in Louisiana granting letters of administration was a judicial determination of the existence of the necessary facts preliminary to them.

The parish court had unquestionable jurisdiction of the intestate estate or succession of Simmons.

The court directed an inventory of the estate, and appointed an administrator, in the same order, and the inventory was filed upon the following day. *Held*, that this was a sufficient compliance with the requirements of the Louisiana Code, Art. 1190.

Whether the person appointed administrator by the parish court was or was not the public administrator, who, under the law of Louisiana then in force, was the only person to whom such administration could be committed, was a matter to be considered by the court making the appointment, and its judgment thereon cannot be impeached collaterally. *Comstock* v. *Crawford*, 3 Wall. 396, and *McNitt* v. *Turner*, 16 Wall. 352, affirmed and applied.

It was the intent of the legislature of Louisiana in enacting article 1190 of the code that small successions should be granted without previous notice, and that the settlement of them should be done in as summary a manner as possible.

It is settled in Louisiana that the purchaser at a sale under the order of a probate court, which is a judicial sale, is not bound to look beyond the decree recognizing its necessity: the jurisdiction of the court may be inquired into, but the truth of the record concerning matters within its jurisdiction cannot be disputed.

The judgment of a parish court in Louisiana, within the sphere of its jurisdiction, is binding upon the courts of the several States and of the United States.

A court of equity will not entertain jurisdiction to set aside the granting of letters of administration upon a succession in Louisiana on the ground of fraud, and will not give relief by charging purchasers at a sale made by the administrator under order of the court, and those deriving title from them, as trustees in favor of alleged heirs or representatives of the deceased.

IN EQUITY. Decree dismissing the bill. Complainants appealed. The case is stated in the opinion.

*Mr. S. Davis Page* for appellants.

*Mr. John Douglass Brown, Jr.,* and *Mr. J. LeRoy Wolfe* for appellee.

MR. JUSTICE LAMAR delivered the opinion of the court.

This was a suit in equity, brought in the Circuit Court of the United States for the Eastern District of Pennsylvania, by ten citizens of Louisiana, two of Mississippi and four of Texas, in their own behalf and in behalf of certain other persons whose names are not known, all of whom claim to be the legal descendants of Robert M. Simmons, late a citizen of Louisiana, against Harry R. Saul, a citizen of Pennsylvania. Its object was to charge the defendant, as the former owner of a tract of land in Wisconsin, as the trustee for complainants, with respect to said ownership, and have him account for the value of the lands, for all their rents and profits received by him and his grantees, and for all loss and damages resulting to the property by reason of the cutting of timber thereon by the defendant and his grantees, and for any other loss occasioned by the defendant's acts.

The amended bill filed December 23, 1890, contained, substantially, the following material averments: In or about the year 1830, Robert M. Simmons died unmarried and intestate in Washington parish, Louisiana, seized and possessed of an inchoate land claim in St. Tammany parish, for 640 acres, founded upon the purchase of a settlement right, which claim was entered as No. 930, in the report of Commissioner James O. Cosby, dated June 7, 1812, and, with others, was confirmed by the act of Congress of March 3, 1813.

These complainants are the collateral heirs of Robert M. Simmons, being the lineal descendants of his brothers and sisters, and are all named specifically, excepting the descendants of one sister, who are alleged to be about seventy in number, and so widely scattered that it would be inconvenient to make all of them parties to the suit, wherefore it was asked that the suit might be maintained for the benefit of all of the complainants who were named, and for the unnamed complainants who might afterwards intervene and become parties to it.

By the law of Louisiana in force at the date of the death of Robert M. Simmons, and ever since, the heirs of a decedent

become seized and possessed of his whole estate, both real and personal, immediately upon his death, subject only to their right to renounce said succession, or to the right of creditors to require an administration thereof in case of non-action by the heirs. Such renunciation is not presumed, but must be made by formal act before a notary, but such acceptance may be evidenced by any act of the heirs indicating their intention to exercise ownership over the ancestor's property, and is always presumed unless the contrary appear. After an acceptance by the heirs or any of them of the succession of their ancestor no administrator can lawfully be appointed to administer thereon.

For reasons not involving fault on the part of Robert M. Simmons, or any of his heirs, the said land claim remained unlocated and unsatisfied until Congress passed the act of June 2, 1858, 11 Stat. 294, c. 81, the third and fourth sections of which provided as follows:

"Sec. 3. That in all cases of confirmation by this act, or where any private land claim has been confirmed by Congress, and the same, in whole or in part, has not been located or satisfied, either for want of a specific location prior to such confirmation, or for any reason whatsoever, other than a discovery of fraud in such claim subsequent to such confirmation, it shall be the duty of the surveyor general of the district in which such claim was situated, upon satisfactory proof that such claim has been so confirmed, and that the same, in whole or in part, remains unsatisfied, to issue to the claimant, or his legal representatives, a certificate of location for a quantity of land equal to that so confirmed and unsatisfied; which certificate may be located upon any of the public lands of the United States subject to sale at private entry, at a price not exceeding one dollar and twenty-five cents per acre: *Provided*, That such location shall conform to legal divisions and subdivisions.

"Sec. 4. That the register of the proper land office, upon the location of such certificate, shall issue to the person entitled thereto a certificate of entry, upon which, if it shall appear to the satisfaction of the commissioner of the general

land office that such certificate has been fairly obtained, according to the true intent and meaning of this act, a patent shall issue as in other cases."

No limit of time was fixed for the presentation of claims under that act for certificates of location therein provided for. During the lapse of time between the origin of said inchoate claim, its confirmation, and the passage of the act of Congress for its satisfaction, many of those interested in it had died, and their heirs, or legal representatives, many of whom were minors, had become widely scattered, and by reason of such delay had lost all hope of satisfaction of the claim. Neither the complainants nor any other persons interested in the claim, who were alive at the time the act was passed, knew of the existence of the claim, of the passage of that act, or of their rights thereunder, until within a year before the commencement of this suit; none of the surveyors general for the district of Louisiana, since the passage of the act, ever took any steps to apprise them of their rights, it being the practice to issue certificates of location under the act only upon application therefor; and none of the persons lawfully interested in the claim ever applied for or received any certificates of location in satisfaction of any part of the claim.

Notwithstanding the above facts and provisions of law, one Daniel J. Wedge, on the 8th of May, 1872, induced the district attorney *pro tempore*, one David Magee, of Washington parish, Louisiana, to file his petition in the parish court of that parish, by the said Daniel J. Wedge, as attorney, alleging that the estate of Robert M. Simmons was vacant, and that it consisted of the confirmed but unsatisfied land claim hereinbefore referred to, which was less than $500 in value, and praying to be appointed administrator thereof, and for an inventory and sale of the same under the laws of Louisiana regulating the administration of vacant estates of less than $500 of value; that such proceedings were had that, on the 8th day of May, 1872, the judge of the parish court, in pursuance of said petition, issued an order purporting to appoint said David Magee administrator of said estate, and to direct an inventory of the same to be made, and a sale of the prop-

erty, which might be found to belong thereto, to pay debts; that said inventory was returned on the 9th day of May, 1872, and, on the 22d of the same month, a pretended sale of the claim was made in accordance with the aforesaid order, at which sale one Addison G. Foster pretended to purchase it for the sum of $30, which sum was wholly used and expended in the payment of the costs and expenses of such pretended administration, no other debts than those created thereby existing or being shown to exist. . A copy of all those proceedings in the parish court was annexed to the bill and made a part of it, and will be referred to more in detail as we proceed.

At the time the pretended administration proceedings in the parish court were had, the parish court of Washington parish was a court of limited, special and statutory jurisdiction, and in the matter of said proceedings pretended to act under special statutory authority, which is set out with some degree of particularity.

Afterwards said Addison G. Foster, claiming to be the legal representative of Robert M. Simmons, by virtue of the aforesaid proceedings in the parish court, applied to Everett W. Foster, the surveyor general of the United States for the district of Louisiana, (who, it seems, was the brother of applicant,) for the delivery to him, as such legal representative, of the certificates of location in satisfaction of the aforesaid land claim, under the act of 1858, and the surveyor general, on or about the 31st day of August, 1872, prepared certificates of location for the whole claim, and forwarded them to the commissioner of the general land office, who authenticated them, and afterwards delivered them to Chipman, Hosmer & Co., of Washington, D.C., as the agents for Foster. A copy of one of the certificates of location with the form of the authentication by the commissioner, and the following certificate of the surveyor general for the district of Louisiana, is set out in full in the bill:

"I certify that from evidence filed in this office, A. G. Foster is the legal representative of Robert M. Simmons, and as such is entitled to locate the within strip.

"E. W. FOSTER, *Surveyor General.*"

The evidence referred to in that endorsement consisted solely of the pretended act of sale under the administration proceedings before mentioned.

Thereafter certain of those certificates were located by Addison G. Foster, or his agents, upon certain described lands in Wisconsin, and a patent for those lands was issued by the United States in the name of Robert M. Simmons, or his legal representatives, which patent recited the provisions of the third and fourth sections of the act of June 2, 1858, above set forth, the issue of the certificates of location by the surveyor general of Louisiana, the name of the commissioner who originally reported the claim, the date of the confirming act, the number of the certificate by virtue of which the land was located, and that the location of the tract was "in part satisfaction of the aforesaid claim of Robert M. Simmons."

Thereafter the defendant herein pretended to purchase those lands from said Addison G. Foster, through his attorney-in-fact, by quitclaim deed, which deed together with the patent was recorded in the office of the register of deeds of Chippewa County, Wisconsin, on the 13th of January, 1875. By several mesne conveyances the land passed to one Charles Saul, who gave to the defendant a power of attorney to convey the lands, which was recorded June 9, 1883. The whereabouts of all the grantees in those conveyances are unknown to complainants, but are believed to be not within the jurisdiction of the court. In 1878, while defendant was in possession of the lands in question, claiming title thereto, he removed therefrom certain timber and other valuable products, and sold the same for large sums of money, and received large rents and profits from the lands, but neglected to pay taxes lawfully assessed thereon; so that in 1880 they were conveyed for the unpaid taxes, whereby the right of complainants to recover the same has been wholly lost and unlawfully defeated. The value of the timber and other products cut and removed from the land, and the value of the lands themselves, largely exceeded $10,000, the precise amount being impossible to state.

The aforesaid administration proceedings in the matter of

the succession of Robert M. Simmons, the sale of the land claim, the application for and delivery of the certificates of location, the location of them upon the lands in question, and the issue of certificates of entry and patents therefor, were done, had and contrived in pursuance of certain agreements, entered into about the 16th of August, 1869, between Everett W. Foster, surveyor general of Louisiana, said Addison G. Foster, and certain other named persons, residents of Washington, D. C., New York and Louisiana, for the purpose of securing for their own use and benefit, and in fraud and disregard of the rights of the persons justly entitled thereto, certificates of location authorized by the said act of Congress of 1858, by means of pretended administration sales of confirmed claims, as part of the property of the successions of the original confirmees or owners thereof, in Louisiana, which successions were administered in various parishes of Louisiana, in large numbers, under alleged authority of the provisions of Louisiana law relating to the administration of vacant estates of less than $500 in value. All the papers in those proceedings were made out upon pi ited forms furnished by the parties to those agreements. All of the proceedings in relation to the claim in suit, the cutting of the timber aforesaid, and all other acts in anywise connected with the claim or land, were done and had without the knowledge of complainants, or of any person interested in the claim; and not until within a year last past did they ascertain anything in relation thereto.

The bill then avers that all of the aforesaid proceedings in relation to the issue of certificates of location in satisfaction of the claim, the location of them upon lands in Wisconsin, the issue of patents, etc., and all other acts in anywise connected therewith, or with respect to the land, were done and had in fraud of the rights of complainants, and those interested in the claim.

The prayer of the bill was that complainants might be adjudged and decreed to be the true legal representatives of said Robert M. Simmons; that the aforesaid proceedings in the parish court in relation to the sale of the land claim might be adjudged null and void; that an account might be taken,

by and under the direction and decree of the court, of the timber and other products removed from the land by the defendant, or with his permission or authority, and of the value of the timber and products and land lost by reason of the same having been sold and conveyed for taxes; that the defendant might be decreed to pay unto complainants the value of the timber and products so removed, with interest from the date of such removal; that the defendant might be decreed to pay to them the highest value of the lands since the date of the assessment of the taxes for which the land was sold as aforesaid; and for other and further general relief, etc.

Certified copies of all the papers, orders, judgment, etc., of the parish court of Washington parish, Louisiana, in the matter of the succession sale aforesaid, also of the certificates of location, the patent and the aforesaid agreement in the matter of Louisiana land claims, were attached to the bill, as exhibits.

The defendant demurred to the bill, setting up fifteen grounds in support of the demurrer; and on January 6, 1891, the court below sustained the demurrer, and entered a decree dismissing the bill. An appeal from that decree brings the case here.

The first and main ground of the demurrer in this case is, that the facts stated in the complaint show that the relief claimed by the complainants is barred by the judgment or decree of a court of competent jurisdiction, rendered in proceedings regular on their face, and which have not been attacked by any proceeding in that court, or in any appellate court. The bill alleged that the court which rendered that judgment was without jurisdiction; that its proceedings in the matter did not conform to the statute under the authority of which it assumed to act; that the judgment itself was obtained by a fraud upon the court; and that necessarily the pretended succession sale had in pursuance thereof, from which the appellee derived title to the lands with respect to which he committed the wrongs complained of, was illegal and void as to complainants, who, as heirs of Robert M. Simmons, deceased, are the equitable owners of said property. The pleadings, therefore, at the outset, present to us these two questions:

(1) The validity of the judgment of the parish court of Washington parish ordering the succession sale of the unlocated land claim of Robert M. Simmons, deceased, and the legality of the sale thereunder, irrespective of any question of fraud. (2) As to the fraud by which it is alleged the judgment in question was procured.

It is the settled doctrine of this court that the constitutional provision that full faith and credit shall be given in each State to the judicial proceedings of other States, does not preclude inquiry into the jurisdiction of the court in which a judgment is rendered over the subject matter or the parties affected by it, nor into the facts necessary to give such jurisdiction. *Thompson* v. *Whitman*, 18 Wall. 457; *Cole* v. *Cunningham*, 133 U. S. 107.

This leads to the consideration of the powers of the parish courts in Louisiana in 1872, especially with regard to their jurisdiction in probate and succession matters. The constitution of the State, adopted in 1868, under which the judicial proceedings in 1872 took place, provided in Art. 73 that "The judicial power shall be vested in a Supreme Court, in district courts, in parish courts and in justices of the peace." In Art. 87, that "All successions shall be opened and settled in the parish courts; and all suits in which a succession is either plaintiff or defendant may be brought either in the parish or district court, according to the amount involved." And in Art. 88, that "In all probate matters, where the amount in dispute shall exceed five hundred dollars, exclusive of interest, the appeal shall be directly from the parish to the Supreme Court."

The laws of Louisiana, in force when the proceedings in the parish court occurred, relating to the subject under consideration, provide that (Rev. Stat. 1870) "The parish courts of this State shall have jurisdiction . . . of all the matters provided for and embraced in title three (3), part second, of the 'Code of Practice,' which treats of proceedings in the courts of probate."

Art. 921, Code of Practice: "Courts of probate are specially established to appoint legal representatives for minors,

orphans, insane and absent persons, and to superintend the administration of vacant successions."

Art. 923. "The parish judges are *ex officio* judges of the courts of probate, in their respective parishes."

Art. 924. "Courts of probate have the exclusive power: . . . 4. To appoint curators to vacant estates and absent heirs. 5. To grant orders to make the inventories and sales of the property of successions, which are administered by curators or testamentary executors, or in which the heir prays for the benefit of inventory."

Art. 872, Civil Code of 1870: "Succession signifies also the estates, rights and charges which a person leaves after his death, whether the property exceeds the charges or the charges exceed the property, or whether he has only left charges without any property."

Art. 873. "The succession not only includes the rights and obligations of the deceased, as they exist at the time of his death, but all that has accrued thereto since the opening of the succession, as also the new charges to which it becomes subject."

Art. 1095. "A succession is called vacant when no one claims it, or when all the heirs are unknown, or when all the known heirs to it have renounced it."

Art. 1097. "Vacant successions are managed by administrators appointed by courts, under the name of curators of vacant successions."

Art. 934. "The succession, either testamentary or legal, or irregular, becomes open by death or by presumption of death caused by long absence, in the cases established by law."

Art. 935. "The place of the opening of successions is fixed as follows: In the parish where the deceased resided, if he had a fixed domicil or residence in this State."

Art. 929, Code of Practice: "The place in which a succession is opened is, and in future shall be held to be, as follows, notwithstanding any former law to the contrary: In the parish where the deceased resided, if he had a domicil or fixed place of residence in the State."

Art. 946, Civil Code: "Though the succession be acquired

by the heir from the moment of the death of the deceased, his right is in suspense, until he decide whether he accepts or rejects it."

Art. 988. "The simple acceptance may be either express or tacit. It is express when the heir assumes the quality of heir in an unqualified manner, in some authentic or private instrument, or in some judicial proceeding. It is tacit when some act is done by the heir which necessarily supposes his intention to accept, and which he could have no right to do but in his quality of heir."

Art. 1190. "If a succession is so small or is so much in debt that no one will accept the curatorship of it, the judge of the place where the succession is opened, after having ordered an inventory of the effects composing it, shall appoint the district attorney of the district or the district attorney *pro tempore* of the parish, curator of said succession, who shall cause the effects to be sold, and the proceeds to be applied to the payment of its debts; the whole to be done in as summary a manner as possible to diminish costs; provided, that this article is not to apply to successions amounting to more than five hundred dollars."

Art. 611 of the Code of Practice provides that where no appeal has been taken within the delay prescribed by law, the nullity of the judgment may be demanded by means of an action brought before the court which has rendered the same within a time prescribed. And Art. 607 provides that a definitive judgment may be annulled in all cases where it appears that it has been obtained through fraud or through ill practices on the part of the party in whose favor it was rendered.

The provisions of the law abundantly show, we think, that the parish courts were vested with original and exclusive jurisdiction over the administration of vacant and intestate successions, such as the allegations of the bill show this to have been. They do not differ very materially from the laws of most of the States regulating probate matters. The general principles of probate jurisdiction and practice, as settled by a long series of decisions in the state courts and in the courts of the United States, are applicable to the powers and proceedings of the par-

ish courts of Louisiana, and have been recognized and enforced by the Supreme Court of that State. They also show that, under the averments of the bill, the parish court of Washington parish had jurisdiction of the succession of Robert M. Simmons. The succession had been open for over forty years, and no one had claimed it; nor did any of the complainants as heirs accept it either expressly in writing or by judicial proceeding; nor tacitly by doing any act which necessarily supposed their intention to accept. It was very properly adjudicated to be vacant, and was administered as such. Washington parish was the one in which the deceased was domiciled at the date of his death, and the succession, being less than $500 in value, was administered under section 1190 of the code. The petition, in reciting that "Robert M. Simmons departed this life in said parish many years since, . . . leaving some property consisting of an old deferred unlocated purchase land claim," and that the same was less than $500. in value, and praying for an inventory, appraisement and sale to pay debts, etc., set forth the necessary jurisdictional facts to warrant the court in proceeding to administer the estate. The court, therefore, had before it in the petition the death of Simmons within the parish, his intestacy, the possession of property and the smallness of the estate. The order granting letters of administration was a judicial determination of the existence of all those facts. Admitting all the facts well pleaded in the complaint to be true, as we are bound to do on demurrer, it is our opinion that the parish court of Washington parish had a clear and unquestionable jurisdiction of the intestate estate or succession of Robert M. Simmons.

But it is contended that the irregularities and failures to comply with the law in the probate proceedings ousted the court of its jurisdiction, and rendered the decree of sale and the sale itself invalid. We will proceed to consider these alleged failures, so far as they affect the jurisdiction, in the order in which they are stated in counsel's brief. The first is, that the proceeding is void, because the appointment of an administrator was made before the inventory of the estate was ordered, contrary to Art. 1190 of the Louisiana Code,

which permits such appointment to be made only after an inventory is ordered. The answer to this is, that the court directed an inventory and appointed an administrator in the same order, and that on the next day the inventory was filed, upon which the court based its order, directing the sale to be made. This was, in effect, a compliance with the statute, and the objection is more technical than substantial. The next point relied on to show the invalidity of the proceedings is, that the administrator appointed by the court was not the public administrator, who, under the law of Louisiana then in force, was the only person to whom such administration could be committed. This point has been considered in two cases before this court, and in each was held to be without merit. *Comstock* v. *Crawford*, 3 Wall. 396, 403 ; *McNitt* v. *Turner*, 16 Wall. 352, 363. In the former of these cases the question before the court was as to the validity of an administrator's sale in the Territory of Wisconsin. The statute of the Territory provided that there should be appointed by the governor, in and for each county, a person known as " the public administrator " therein ; and it further required that the administration of a non-resident intestate shall be granted to such public administrator of the county in which the non-resident intestate died. It was contended in that case, as it is here, that the sale was invalid, because the administrator appointed by the probate court was not the public administrator. The court, in answer to this contention, said, Mr. Justice Field delivering the opinion : " It is well settled that when the jurisdiction of a court of limited and special authority appears upon the face of its proceedings, its action cannot be collaterally attacked for mere error or irregularity. The jurisdiction appearing, the same presumption of law arises that it was rightly exercised as prevails with reference to the action of a court of superior and general authority. . . . Whether there was a widow of the deceased, or any next of kin, or creditor, who was a proper person to receive letters, if he had applied for them, or whether there was any public administrator in office authorized or fit to take charge of the estate, or to which of these several parties it was meet that the administration should

be intrusted, were matters for the consideration and determination of the court; and its action respecting them, however irregular, cannot be impeached collaterally." In the case of *McNitt* v. *Turner, supra,* the same question under a similar statute was presented and decided in the same way.

Another ground is that Art. 1115 of the Louisiana Code required ten days' public notice before the appointment of an administrator; that, according to the allegations of the bill, no notice of the appointment in the proceedings under consideration was given; and that under Art. 1167 of the same code property belonging to vacant successions could only be sold at public auction after ten days' advertisement for movables and thirty days' for immovables. We do not think that the requirements in Arts. 1115 and 1167, as to advertisements, apply to the proceedings in question, which were instituted under Art. 1190. That article, as we have seen, provides as follows:

"Art. 1190. If a succession is so small or is so much in debt that no one will accept the curatorship of it, the judge of the place where the succession is opened, after having ordered an inventory of the effects composing it, shall appoint the district attorney of the district or the district attorney *pro tempore* of the parish, curator of said succession, who shall cause the effects to be sold, and the proceeds to be applied to the payment of its debts; the whole to be done in as summary a manner as possible to diminish costs; provided, that this article is not to apply to successions amounting to more than five hundred dollars."

The history of this provision leads to the conclusion that it was the intention of the legislature that the administration of such small successions should be granted without previous notice, and that the settlement of them should be done in as summary a manner as possible. But even if it be conceded that the requirements referred to do apply, we are of the opinion that, the jurisdiction over the subject matter having attached, any informalities as to notices, advertisements, etc., in the subsequent proceedings of the court, cannot oust that jurisdiction. They are, at most, errors which could be cor-

rected on appeal, or avoided in a direct action of annulment, as expressly provided in the articles of the code above cited, but cannot be made the grounds on which the decree of the. court can be collaterally assailed.

Our conclusion on this branch of the case is fully borne out by many decisions of this court, two of which are cited above. In *McNitt* v. *Turner*, 16 Wall. 366, Mr. Justice Swayne, speaking for the court, said : "Jurisdiction is authority to hear and determine. It is an axiomatic proposition that when jurisdiction has attached, whatever errors may subsequently occur in its exercise, the proceeding being *coram judice*, can be impeached collaterally only for fraud. In all other respects. it is as conclusive as if it were irreversible in a proceeding for. error." *Grignon's Lessee* v. *Astor*, 2 How. 319, 337, 340, 341, was, like this, a case of a sale by an administrator. . The court, in its opinion, said : "The whole merits of the controversy depend on one single question : had the county court of Brown County jurisdiction of the subject on which they acted ? . . . Nor is it necessary that a full or perfect account should appear in the records of the contents of papers on file, or the judgment of the court on matters preliminary to a final order ; it is enough that there be something of record which shows the subject matter before the court, and their action upon it, that their judicial power arose and was exercised by a definitive order, sentence or decree. . . . The granting the. license to sell is an adjudication upon all the facts necessary to give jurisdiction, and whether they existed or not is wholly immaterial, if no appeal is taken ; the rule is the same whether the law gives an appeal or not ; if none is given from the final decree, it is conclusive on all whom it concerns. . . . The court having power to make the decree, it can be impeached only by fraud in the party who obtains it. 6 Pet. 729. A purchaser under it is not bound to look beyond the decree ; if there is error in it, of the most palpable kind, if the court which rendered it have, in the exercise of jurisdiction, disregarded, misconstrued or disobeyed the plain provisions of the law which gave them the power to hear and determine the case before them, the title of a purchaser is as much protected

as if the adjudication would stand the test of a writ of error." The following authorities are strong in support of the general proposition under consideration; *Thompson* v. *Tolmie*, 2 Pet. 157; *Mohr* v. *Manierre*, 101 U. S. 417; *Comstock* v. *Crawford*, *supra*; *Florentine* v. *Barton*, 2 Wall. 210; *Thaw* v. *Ritchie*, 136 U. S. 519.

The adjudications of the Supreme Court of Louisiana are in entire harmony with those decisions. It has long been a fundamental principle of law in that State that "the purchaser at a sale under the order of a probate court, which is a judicial sale, is not bound to look beyond the decree recognizing its necessity. He must look to the jurisdiction of the court; but the truth of the record concerning matters within its jurisdiction cannot be disputed." 2 Hen. Dig. 1494, par. 5, citing a long list of authorities.

One of the leading cases is *Lalanne's Heirs* v. *Moreau*, 13 La. 433, 436. In that case the heirs brought an action of ejectment in the district court against the purchasers at a sale made by order of the probate court of the real estate of their ancestor, and recovered judgment. Upon appeal the Supreme Court of the State reversed that judgment, thus upholding the title acquired at the succession sale. In its opinion the court said: "We place our decision on the broad ground that sales directed or authorized by the courts of probate are judicial sales to all legal intents and purposes. It was so decided by this court in the cases already alluded to, and the principle is recognized in that of *Pintard* v. *Deyris*, 3 Martin, N. S. 32. Art. 114, p. 366, of the old Civil Code, also seems to recognize it, and it is a textual provision of the Louisiana Code, included in Art. 1863. The necessity and wisdom for such a rule of property has long been felt and acknowledged in the most important States of the Union, and none is better settled by the decisions of their courts. They all maintain . . . that a judgment, decree, sentence or order passed by a competent jurisdiction, which creates or changes a title or any interest in an estate, is not only final as to the parties themselves and all claiming under them, but furnishes conclusive evidence to all mankind that the right or interest belongs to the party to whom the court adjudged it."

In *Valdere* v. *Bird*, 10 Rob. La. 396, 398, the court said: "It is now well settled that where there is a formal decree of the court of probates, recognizing the necessity of selling the property inherited by minors for the payment of debts of the succession, and giving an opportunity to the attorney of the absent heirs to show that in fact no such necessity existed, the purchaser is not bound to look beyond the decree. . . . The want of a sufficient time for advertising between the rendition of the judgment of the court of probates and the sale is a defect which the act of 1834 relative to advertisements, was expressly made to remedy. The plea of prescription [five years] must prevail as to that."

In *Beale* v. *Walden*, 11 Rob. 67, 72, the court said: "The whole controversy turns upon the first two questions here presented, to wit, the jurisdiction of the court of probates of the parish of Jefferson, and, if it had such jurisdiction, whether Walden was a purchaser at a judicial sale; for if that court had jurisdiction, we will not go behind its judgment to inquire whether there was legal evidence of a debt, or, in other words, a necessity for the sale, etc."

In *Michel's Heirs* v. *Michel's Curator*, 11 La. 154, the court held that the purchaser is not bound to look beyond the decree of the court of probates recognizing the necessity of the sale. See also *McCullough* v. *Minor*, 2 La. Ann. 466; *Wright* v. *Cummings*, 19 La. Ann. 353; *Sizemore* v. *Wedge*, 20 La. Ann. 124; *Wisdom* v. *Buckner*, 31 La. Ann. 52; *Graham's Heirs* v. *Gibson*, 14 La. Ann. 149; *Ball's Adm'r* v. *Ball*, 15 La. 173, 182; *Rhodes* v. *Union Bank*, 7 Rob. La. 63, 65, 66.

A case of great importance, in this connection, is *Duson* v. *Dupré*, 32 La. Ann. 896. That was a petitory action in a district court, by the curator of the succession of one Louis Blanc and the attorney for the absent heirs of the same succession, to recover a tract of land which they alleged was the property of that succession. The defence was, that the plaintiffs were incapacitated to sue, because their appointment by the parish court of St. Landry was an absolute nullity, for the following reasons: First. That Louis Blanc having died in the parish of Orleans, where he resided, the probate court of

St. Landry had no jurisdiction over his succession. Second. That Louis Blanc having left heirs residing in the State, the probate court could not treat and administer his succession as a vacant estate. The case was tried on those exceptions, and the district court held them sufficient, and thereupon dismissed the action. Upon appeal the Supreme Court reversed that judgment, and held : "In our opinion the district judge erred in allowing this *collateral* attack on the judgment of the probate court. . . . The late parish court of St. Landry had probate jurisdiction, and was exclusively competent to grant and issue letters of administration in all successions properly opened in that court. Defendants contend that this succession was not properly opened in that court, for the reasons urged in their exceptions. This denial presents a question of fact; that the deceased was not a resident of this parish, and that, having left heirs who were residents of this State, his succession was not vacant so as to necessitate or justify the appointment of a curator. . . . These questions can be looked into and adjudicated upon only in a direct action before the same court, or before the tribunal now vested with original probate jurisdiction in the parish of St. Landry. No principle of our jurisprudence is more firmly established than the following: 'Letters of administration make full proof of the party's capacity until they be revoked. They must have their effect, and the regularity of the proceedings on which they issued cannot be examined collaterally.' This rule was laid down in the early days of our jurisprudence, and has been sanctioned, confirmed and consecrated by an unbroken line of decisions of this court down to the present day;" citing a long list of authorities.

The cases cited by counsel for appellants, instead of militating against the doctrine of the cases above referred to, are in reality in harmony with them. Many of them were cases in which the judgment of the probate court was attacked directly by appeal or by an action of nullity, and not collaterally; while others were legal actions of revendication to try a title held under a will alleged to be invalid, which, under the code, are expressly authorized to be brought in the district court.

Having reached the conclusion that a judgment of a parish court of Louisiana, rendered within the sphere of its jurisdiction, is binding upon the courts of the several States and of. the United States, the next question for our consideration relates to the averments of fraud in connection with the succession sale. These averments, divested of the usual epithets. of fraud, in such cases, and considered apart from the allegations of a lack of jurisdiction in the court, and of jurisdictional defects in the subsequent proceedings, are meagre and indefinite as to any particular acts of fraud upon the court or upon the appellants. They do not state any falsehood, imposition or undue influence upon the court or any of its officers. They are to the effect, when sifted, that a large number of persons, including the United States surveyor general for Louisiana and his brother, Addison G. Foster, the purchaser of this claim, in 1872, had entered into agreements to purchase a great number of confirmed private land claims in Louisiana, at succession sales, and then have them satisfied by certificates of location under the act of 1858; and that this sale was a consummation of a part of this agreement. It may be proper here to observe that the instrument attached to the bill as an exhibit, and referred to as reciting one of these alleged agreements, says nothing whatever in relation to administration of vacant successions, or sales thereunder, as set forth in the bill, and to that extent negatives its averments. Nor do they mention any fact connected with such alleged agreement which in any way affected the judicial proceedings that were taken in this administration or tended to influence the sale thereunder.

But waiving everything as to the sufficiency of the allegations of fraud, the question arises, do they furnish any grounds. for the annulment by a court of equity of the probate proceedings under consideration, for the purpose of charging the defendant as a trustee for the benefit of complainants? We think not, and in this view we are sustained by a number of decisions of this court, to some of which we now refer. *Christmas* v. *Russell*, 5 Wall. 290, was an action of debt brought in the United States Circuit Court for the Southern District of

Mississippi, on a judgment obtained against the defendant in Kentucky. The defendant pleaded that the judgment had been obtained by the fraud of the plaintiff. A demurrer to the plea having been sustained by that court, the case was brought here and the judgment below affirmed, upon the ground that fraud could not be pleaded to an action in one State upon a judgment obtained in another.

In *Maxwell* v. *Stewart*, 22 Wall. 77, 81, the very same question was presented to this court, in a similar case, upon the same plea, and this principle was reaffirmed.

In *Hanley* v. *Donoghue*, 116 U. S. 1, 4, the court said, Mr. Justice Gray delivering the opinion: " Judgments recovered in one State of the Union, when proved in the courts of another, differ from judgments recovered in a foreign country in no other respect than that of not being reëxaminable upon the merits, nor impeachable for fraud in obtaining them, if rendered by a court having jurisdiction of the cause and of the parties ; " citing *Buckner* v. *Finley*, 2 Pet. 592; *M'Elmoyle* v. *Cohe* ,, 13 Pet. 312, 324; *D'Arcy* v. *Ketchum*, 11 How. 165, 176; *Christmas* v. *Russell*, 5 Wall. 290, 305; *Thompson* v. *Whitman*, 18 Wall. 457.

The case of *Broderick's Will*, 21 Wall. 503, upon this point is absolutely conclusive against the appellants. That was a bill in equity brought by the alleged heirs-at-law of Broderick to set aside and annul the probate of his will in the probate court of California, and to recover the property belonging to his estate, or to have the purchasers at the executor's sale thereof, and those deriving title from them, charged as trustees for the benefit of complainants. The bill alleged that the will was forged; that the grant of letters testamentary and the orders for the sale of the property were obtained by fraud, all of which proceedings, as well as the death of the decedent, were unknown to the complainants until within three years before the filing of the bill. A demurrer to the bill was overruled and the case was appealed to this court. It was held, Mr. Justice Bradley delivering the opinion, that a court of equity will not entertain jurisdiction to set aside the probate of a will, on the ground of fraud, mistake or forgery, this

being within the exclusive jurisdiction of the probate court; and that it will not give relief by charging the purchasers at the executor's sale, under the orders of the probate court, and those deriving title from them, as trustees, in favor of a third person, alleged to be defrauded by the forged or fraudulent will, where the court of probate could afford relief, in whole or in part.

With the single exception that that case was brought to set aside the probate of a will, and this was brought to set aside the granting of letters of administration upon a succession, the two cases are as much alike as two photographs of the same person, the lineaments of the alleged fraud being more distinctly brought out in the bill in the case of *Broderick's Will*, than in the bill in this case. Both were bills in equity, brought by the alleged heirs-at-law of a decedent, to set aside and annul a decree of a court of probate, and all the subsequent proceedings, including the order of sale and the sale itself. Both alleged fraud in the procurement of the respective decrees, and knowledge of the fraud by the defendants — actual knowledge in the *Broderick Case*, and constructive knowledge in this case. Both showed a long period of delay — nine years in the *Broderick Case*, and eighteen in this case, and both set up ignorance of the facts as the excuse for laches ; and in both cases, according to the averments of the bill in each, the probate court had adequate power to afford relief. See also *Ellis* v. *Davis*, 109 U. S. 485. We think the decision in that case is applicable to the whole of this case upon the question of fraud, and thus obviates the necessity of adverting any further to the question of the establishment of a trust, as against the defendant, in favor of the complainants.

*Decree affirmed.*