## WHITE'S GUARDIAN v. MARTIN et al.

(Third Division. Fairbanks. August 21, 1905.)

No. 296.

1. JUDGMENT—COLLATERAL ATTACK—JURISDICTION—PROBATE.

An erroneous judgment within the jurisdiction of the probate court can only be reviewed and corrected on appeal; when brought in question collaterally, it is conclusive upon parties and privies.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, § 910.]

2. COURTS—JURISDICTION—PRESUMPTIONS.

The power to hear and determine is "jurisdiction." Where jurisdiction is established, all presumptions of law and fact not excluded by the record are in favor of the judgment.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 1, 140.]

3. INSANE PERSONS—GUARDIAN—JURISDICTION.

The probate court has jurisdiction to appoint a guardian of the property of a resident real estate owner who becomes insane and wanders away

4. SAME—RESIDENCE.

One "resides" in a place when he lives or dwells there; when it is his settled abode; his habitation; his home. There must be a settled, fixed abode, an intention to remain permanently, at least for a time, for business or other purposes, to constitute a "residence," within the legal meaning of the term.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Insane Persons, § 47.]

5. PUBLIC LANDS—POSSESSORY RIGHTS—ABANDONMENT—INTENT—PRESUMPTION.

White was a resident of Fairbanks, where he owned a home and other real and personal estate. He became insane, and wandered away. *Held*, that there was no presumption of law, from the admitted fact of his absence, that he intended to abandon his possessory claims on the public lands.

6. INSANE PERSONS—APPOINTMENT OF GUARDIAN—COLLATERAL ATTACK.

The defendants claimed the property of one White, who became insane and wandered away. *Held*, that they would not be heard in a collateral proceeding to challenge the jurisdiction of the probate court to appoint a guardian for the insane man's property, since they are adverse claimants, and do not appear in his interest.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Insane Persons, § 55.]

7. SAME—PUBLIC LANDS—ABANDONMENT—INTENT.

Abandonment of possessory rights upon the public domain is a question of intent, as well as of fact. A finding that real property has been abandoned is not sustained unless the evidence shows that the premises were left vacant, without any intention of reclaiming possession, and with an intention to leave them open for the occupation of any one who might choose to enter. *Held*, that an insane person can have no such intention.

8. SAME—PRESUMPTIONS.

The court will not admit evidence to prove or presume an intent on the part of an admittedly insane settler on the public domain to abandon his possessory rights, though the fact of his absence be admitted. When the fact of his insanity is established, the court will, to protect his estate from forfeiture from an alleged abandonment, conclusively presume that his unexplained absence therefrom results from his insane delusions, and not from any sane or rational intent.

Demurrer to defendants' further and separate answer. Upon its face this answer shows that in 1903 Andrew White entered upon two vacant town lots on Wendell avenue, in the town of Fairbanks, Alaska, and improved them by building houses, fences, and other improvements to such an extent that when his estate was appraised, as therein stated, it was declared to be of the value of $4,000. That on April 17, 1905, one John L. Long filed a petition in the probate court for Fairbanks precinct, alleging that White was a resident of Fairbanks precinct, and owned an estate therein, and that in July, 1904, he had left his property locked up, with no one in charge, had gone away, and had not returned, and that petitioner believed him to be insane. The probate court on April 28th made an order that May 9th be fixed as the date of hearing, and ordered that notice be given by publication in the local newspaper and also by posted notices in three public places. Such notices were given "to Andrew White and to all others whom it may concern." On May 9th a hearing was had before the probate court, witnesses were called, and the evidence taken in support of the allegations of the petition. The court found that White was a resident of the precinct, and had real and personal property therein of the value of at least $2,000, and that a guardian of such estate ought to be appointed. The court by order appointed H. M. Badger guardian of the person and property of the insane person. Badger qualified as such guardian, and thereafter brought this suit in ejectment to recover possession of the lots and buildings belonging to the ward, which had been taken into possession by the defendants, upon the ground that White had abandoned his claims thereto.

Pratt & Johanson, for plaintiff.

Claypool, Stevens, Kellum & Cowles, for defendants.

WICKERSHAM, District Judge. Defendants offer the case of Nettleton v. Mosier (C. C.) 3 Fed. 387, as stating the

2 A.R.—32

correct rule in an action where the judgment of a probate court is collaterally attacked. The court there said:

"The rule of law upon this subject is familiar. An erroneous act or judgment by a court having jurisdiction of the subject-matter and of the parties can be reviewed and corrected only by a tribunal having appellate jurisdiction. When brought in question collaterally or incidently, it is to be regarded as conclusive upon all parties to it, as well as upon privies. On the other hand, the act or judgment of a tribunal having no cognizance of the subject-matter is absolutely null and void, and may be impeached in any court, either directly or collaterally."

Upon the authority of this rule defendants urge that the judgment of the probate court finding White to be insane, and appointing a guardian for his person and property, is null and void for want of jurisdiction apparent on the face of the record, and may be collaterally impeached in this court; that neither White nor the defendants had notice of the proceedings, and that for this defect the judgment is void. Since fraud is not alleged, the rule is that this court has no jurisdiction to inquire into the truth of the facts alleged in support of the probate record—to try the original issues in that case anew. Comstock v. Crawford, 3 Wall. 396, 403, 18 L. Ed. 34; McNitt v. Turner, 16 Wall. 352, 366, 21 L. Ed. 341; Simmons v. Saul, 138 U. S. 439, 452, 11 Sup. Ct. 369, 34 L. Ed. 1054. But does the probate record alleged in defendants' separate and further answer show upon its face that the probate court had jurisdiction to make the judgment?

The power to hear and determine a cause is "jurisdiction." Grignon's Lessees v. Astor, 2 How. 319, 337, 11 L. Ed. 283. Section 895 of the Alaska Code of Civil Procedure provides:

"That commissioners in their respective precincts shall have power to appoint guardians to take care, custody, and management of the estates, real and personal, of all insane persons."

Section 896 provides that:

"When the relatives or friends of an insane person, or any other persons, inhabitants of the precinct in which such insane person

resides, shall apply to the commissioner by petition in writing to have a guardian appointed for him, the commissioner shall cause notice to be given to the supposed insane person of the time and place appointed for hearing the case, not less than ten days before the time so appointed; and if, after a full hearing, it shall appear to the commissioner that the person in question is incapable of taking care of himself, the commissioner shall appoint a guardian of his person and estate with the powers and duties hereinafter specified."

The petition of John L. Long alleged that he was a friend of White, and an inhabitant of Fairbanks precinct, in which White resided. He applied, in writing, to the commissioner to have a suitable person appointed guardian of the person and property of the insane man, whereupon the commissioner caused notice to be given "to Andrew White and to all others whom it may concern" by publication in the local paper, and by three posted notices, not less than 10 days before the time appointed for such hearing.

But, it is answered, White was not a resident of the Fairbanks precinct at that time, and received no actual and personal notice. The probate record, however, shows "that prior to July, 1904, the said Andrew White came to Fairbanks, and became a permanent resident of the town, and in pursuance thereof took up lot number one, block number one" therein, and improved the same by constructing a two-story log house and other buildings thereon of a greater value than $1,500, and surrounded the lot with a substantial post and rail fence. The property was appraised at $4,000. White continued to reside on this property until July, 1904, when he left, and has not since been heard from by his friends. The probate record shows, however, that "petitioner is of the opinion that said White was insane when he left Fairbanks in July, 1904, and is in that condition of mind at this time." The judgment of the probate court was that "Andrew White is a resident of Fairbanks, in the Fairbanks recording precinct, and owns real and personal property in the said town of the value of at least

two thousand dollars; that said Andrew White is at this time insane."

The record thus shows that prior to his insanity White was a resident of Fairbanks precinct, and was such a resident when he became insane and wandered away, and the probate court adjudged, from the proofs before it, that he was insane when the judgment was made. The probate court had jurisdiction over his estate in Fairbanks precinct, and the question of jurisdiction over the person depends upon the place of White's residence. Where did he "reside," in contemplation of law, when the probate proceedings were had?

One "resides" in a place when he lives or dwells there; when it is his settled abode; his habitation; his home. There must be a settled, fixed abode, an intention to remain permanently, at least for a time, for business or other purposes, to constitute a "residence," within the legal meaning of that term. Barney v. Oelrichs, 138 U. S. 529, 533, 11 Sup. Ct. 414, 34 L. Ed. 1037. There are two necessary elements in the definition: (1) the presence of the person in the place, and (2) the intention to live there. It is admitted on the face of the probate record that White was a resident in Fairbanks precinct, in the broadest sense of the term, until he became insane and wandered away in July, 1904; but in my judgment the fact of insanity at that time forbids the court from admitting proof or presuming that he then or since had any intention to abandon his residence therein, though his absence is admitted. An insane man cannot be conclusively presumed to have intended to abandon his home and residence, especially when such presumption results in a forfeiture of his estate. A minor cannot form such an intention for himself. In Re Cannon's Estate, 15 Pa. Co. Ct. R. 312, 314; 7 Words and Phrases, "Residence." Since the law will not charge White with the intention of abandoning his residence in Fairbanks precinct on account of insanity, the court must hold that it was his

technical, constructive, and legal residence at the time of the notice and judgment in the probate proceedings appointing his guardian.

It is also urged that the statute requires notice to be given to the insane man, and that since he was absent it could not be given, and that for that reason there was no jurisdiction in the probate court to appoint the guardian. The statute requires that:

"The commissioner shall cause notice to be given to the supposed insane person of the time and place appointed for hearing the case, not less than ten days before the time so appointed." Section 896, Code of Civil Procedure.

The statute does not prescribe how this notice shall be given. If the supposed insane person were present in the precinct, it would undoubtedly be safer to make it a personal service; but since he is absent, and no method of service is then specifically stated by statute, "any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code." Section 723, Code of Civil Procedure. In a case where the insane person is a nonresident, the statute requires notice "to be given in such manner as the commissioner shall order." Section 911, supra. That method was adopted in this case, and the notice, by publication and posting, was given "to Andrew White and to all others to whom it may concern." The application for the appointment of a guardian was instituted in White's name by his friends to protect and preserve his property. The object of notice or citation in all legal proceedings is to afford to parties having separate or adverse interests an opportunity to be heard. It is not required for the protection of the applicant or suitor. Since, then, these proceedings were in defense of White's property, until he objects, the probate court's jurisdiction must be upheld from the date of filing the petition. Mohr v. Manierre, 101 U. S. 417, 426, 25 L. Ed. 1052. His liberty was not restricted by the

probate proceedings, nor his property rights invaded. The defendants have no authority to represent him, and ought not to be permitted to question the jurisdiction of the probate court to protect his estate, since they are adverse claimants thereof, based upon his alleged intentional abandonment.

Abandonment of possessory rights upon the public domain is a question of intent, as well as of fact. A finding that real property has been abandoned is not sustained unless the evidence shows that the premises were left vacant without any intention of reclaiming possession, and with an intention to leave them open for the occupation of any one who might choose to enter (Smith v. Cushing, 41 Cal. 97, 99), and in this case the fact of the absence must be supported by clear and convincing proofs of the intention of White to abandon his home. The insanity being admitted, such proofs cannot be made, for an insane person can have no intention.

"Looking at the subject in the light of reason, it is difficult to perceive how one incapable of understanding and of acting in the ordinary affairs of life can make an instrument, the efficacy of which consists in the fact that it expresses his intention, or, more properly, his mental conclusions. The fundamental idea of a contract is that it requires the assent of two minds. But a lunatic, or a person non compos mentis, has nothing which the law recognizes as a mind, and it would seem, therefore, upon principle, that he cannot make a contract as such. * * * The doctrine that a lunatic's power of attorney is void finds confirmation in the analogy there is between the situation and acts of infants and lunatics. Both such classes of persons are regarded as under the protection of the law. But, as already remarked, a lunatic needs more protection than a minor. The latter is presumed to lack sufficient discretion; reason is wanting in degree. With a lunatic it is wanting altogether." Dexter v. Hall, 82 U. S. (15 Wall) 9, 20, 25, 21 L. Ed. 73.

An insane man cannot be punished for a crime, though he commit the act, because by reason of his malady the law excludes the intent; nor will the court admit evidence to prove or presume an intent on the part of an insane man to abandon his property, though the fact of his absence be admitted.

When the fact of his insanity is established, the court will, to protect his estate from forfeiture from an alleged abandonment, conclusively presume that his unexplained absence therefrom results from his insane delusions, and not from any sane or rational intention to abandon it. And in this case there is no presumption of law or fact that White intended to abandon his home from the fact of his absence therefrom. The policy of the government in the disposition of its public lands supports this ruling. Act June 8, 1880, c. 136, 21 Stat. 166 [U. S. Comp. St. 1901, p. 1395]; Dyche v. Beliele, 24 L. D. 494.

Upon the face of the probate record it is my judgment that White was a legal resident of Fairbanks precinct when those proceedings were begun, and that the court had jurisdiction to enter the judgment. Having jurisdiction for the purposes of the petition, the subsequent errors, if any, committed by the probate court, could only be corrected by appeal, and will not oust jurisdiction. Where jurisdiction is established, all presumptions of law and fact not excluded by the record are in favor of the judgment. Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369, 34 L. Ed. 1054.

This case does not fall within the authority of Nettleton v. Mosier, supra, for there the judgment was attacked for fraud. The bill alleged that in the probate petition it was "fraudulently and falsely stated that the said Agnes E. Wells resided in the county of Goodhue; that in fact she did not then, and never did, reside in said county; neither was she an inhabitant thereof," but was at all the times mentioned a resident of Rice county, in that state. It was upon this ground that the court held the proceedings void. No such charge is made in this case. Here the facts stated are admitted to be true. In my judgment the proceedings are regular, and upon their face show that the probate court had jurisdiction. Having jurisdiction, this court has no power to set its judgments aside in a collateral proceeding; it must stand as an irreversible

judgment until attacked in a direct proceeding for fraud or other sufficient cause. Plaintiff's demurrer to the defendants' separate and further answer and defense is sustained.