EUGENIA WASHINGTON, ADMINISTRATRIX,

V.

THE LOUISVILLE AND NASHVILLE RAILROAD COMPANY ET AL.

*Railroads—Negligence—Personal Injuries—Suit by Administrator—Compromise—Fraud.*

1. On motion by defendants for judgment, based on an agreement of compromise claimed by plaintiff to have been obtained from her through fraud, the court may inquire into and determine the questions raised, without compelling defendants to plead the agreement, and make an issue for submission to a jury.

2. Mere expressions of opinion inducive to the execution of an agreement are not such false representations as will avoid it.

3. An administratrix has the power to compromise a suit against a railroad company for the wrongful death of her intestate, without the order of the Probate Court, required by Sec. 83, Chap. 3, R. S.

[Opinion filed June 13, 1890.]

APPEAL from the Circuit Court of Madison County; the Hon. BENJ. R. BURROUGHS, Judge, presiding.

Oscar Washington was killed at the time of the railroad strike in East St. Louis in April, 1886. His administratrix brought this suit March 26, 1888, making the Louisville and

Nashville Railroad Company, the South East and St. Louis Railway Company, Samuel Jones, William Luster, Stewart Martin, John Hague, George Burnett and John Williams, parties defendant. The declaration alleged that the defendants owned and were using a certain railway in the city of East St. Louis in the lifetime of said Oscar Washington, to wit, on the 9th day of April, 1886, extending across Broadway, a public street in said city, and Oscar Washington was passing on and along said street near to said railway, as he rightfully might, whereby it became the duty of the defendants to operate said railway in such a manner as not to unnecessarily injure him, the said Oscar Washington, but the defendants, not regarding such duty, then and there negligently and carelessly fired off and discharged certain pistols, rifles and guns loaded with powder and bullets, and thereby shot and mortally wounded the said Oscar Washington, of which wound he died. The defendants filed a plea of not guilty, the venue of the cause was changed from the City Court of East St. Louis to the Circuit Court of Madison County, and the case continued from term to term until the October term, 1889, of said Circuit Court, when a motion was made by defendants that a judgment be entered for plaintiff against the defendants for the sum of $200, in pursuance of the following agreement:

"STATE OF ILLINOIS }
Madison County, } ss. In the Circuit Court, October term, A. D. 1889.

Eugenia Washington, administratrix of the estate of Oscar Washington, deceased, v. Louisville & Nashville Railroad Company, South East & St. Louis Railway Company, Samuel Jones, William Luster, Stewart Martin, John Hague, George Burnett and John Williams, defendants.

It is hereby agreed between the plaintiff and defendants in the above cause, that at the October term, A. D. 1889, of the Madison County Circuit Court judgment shall be entered by the court in said cause in favor of the plaintiff and against the defendants for the sum of $200 and costs of suit. And the said plaintiff hereby acknowledges receipt in full from

said defendants of the said sum of $200, being the amount in full of said judgment—except costs. And it is hereby agreed by the said plaintiff and the said defendants, that · upon the filing of this agreement in said cause at said October term, A. D. 1889, of the Madison County Circuit Court, said court shall cause to be entered upon its docket, satisfaction in full and release of said judgment so entered as aforesaid, for the sum of $200, except costs of suit. In witness whereof, the parties plaintiff and defendants in this suit have signed this agreement on the 7th day of July, A. D. 1889.

EUGENIA WASHINGTON,

Administratrix of the estate of Oscar Washington, deceased.

EUGENIA WASHINGTON,

EUGENIA SHIELDS,

LOUISVILLE AND NASHVILLE RAILROAD COMPANY and

SOUTH EAST AND ST. LOUIS RAILWAY COMPANY,

By J. M. Hamill, their attorney.

SAMUEL JONES,

WM. LUSTER,

STEWART MARTIN,

JOHN HAGUE,

GEORGE BURNETT and

JOHN WILLIAMS,

By W. Foreman, their attorney.

Signed in presence of

A. L. DAWSON,

G. H. JAMES,

Witnesses.

STATE OF ILLINOIS, } ss.
County of St. Clair, }  I, A. O. Krebs, a notary public in and for said county in the State aforesaid, do hereby certify that Eugenia Shields, formerly Eugenia Washington, and ·Eugenia Washington, administratrix of the estate of Oscar Washington, deceased, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that she signed, sealed

and delivered the said instrument as her free and voluntary act for the uses and purposes therein set forth.

Given under my hand and notarial seal this seventeenth day of July, A. D. 1889.

[SEAL.]     O. A. KREBS,
Notary Public."

The plaintiff in her own behalf and in behalf of her minor child objected to the entry of judgment under said agreement and filed her affidavit in support of her objection, which sets forth in substance, that Henry James, a deputy sheriff, came to her with a bill for costs from the County Court, being the costs of the appointment of plaintiff as administratrix of her husband's estate, stating, as she claims, that she and her bondsmen were liable to pay the same, and mentioned other suits where plaintiff had been compelled to pay heavy costs; that it was no use for poor people to litigate with railroad companies, and that said James offered to see what compromise the railroad companies would be willing to make, and she consented he might do so; that two days after, James, Dawson and Krebs called upon her and James said he could only get $200 upon a settlement, and that he had hard work to get that, and that she had better accept it, that it was the best she could do; that one Jones, who was injured at the time plaintiff's husband was killed, would never get anything; that defendants could keep the case in court as long as they liked; that plaintiff was alone; that she objected to making settlement in the absence of some one to advise with her about it, but James and others continued to urge her to settle until she became so agitated that she did not fully realize what was going on; that a paper was given her and she was requested to read, but she was unable, owing to her condition of mind, to read it, and thereupon one of the men read it to her, but for some reason she could not comprehend it; that when she spoke of advising with some one, James said it was not necessary to see any one, and that James represented that he was acting entirely in her interest in the matter.

The defendants in support of their motion for entry of judgment filed the affidavits of G. H. James, A. L. Dawson and O. A. Krebs. James states that he called upon plaintiff with cost bill from County Court; that he told her that if she did not pay it, her bondsmen would have to pay it, and that one of her bondsmen had told him she would pay it when called upon to do so; that the said she did not know she would have anything to pay, or she would not have gone into it; that she then said the railroad company had offered her $200, and she wished she had taken it, and if she ever had the opportunity again, she would take it; that he then said to her, if she was willing to take $200 he would see if he could get them to renew the offer and asked her if he could get them to give $200, and would bring the money, would she accept it, and she replied, "Yes, and will be glad to get it and stop the thing right where it is;" that he promised to let her know in a few days; that two days after, he called upon the plaintiff in company with Dawson and Krebs and told her that they had come to settle her case with the railroad companies; that she sent a girl who was present out of the room; that Krebs then produced the papers and read them to her; that she took them and read them once herself and when she returned them to Krebs he asked her if she understood what they were and she said yes; that Krebs said further, "If you do not thoroughly understand what you are doing we will proceed no further;" and she said she understood it thoroughly; that Krebs then read them over to her a second time and explained them to her carefully and again asked her if she fully understood them; that the money was then paid to her and she signed the agreement for entry of judgment for $200; that plaintiff said when they went to the house that if she had known they were coming she would have had her husband remain, but it did not make any difference as her husband wanted her to take the money; that plaintiff was not excited but perfectly cool; that when he, James, called on her with the cost bill, nothing was said about other suits and that he said nothing to her to induce her to compromise her claim and did not say that it was useless for poor people to litigate with railroad

companies, and did not say when he went back the second time that he had hard work to get the money, and at no time advised her to take the money; that plaintiff did not ask to wait until she could consult with some one; that all he did was at the request of plaintiff, and that he never spoke with any of the defendants, attorneys or agents, in relation to the matter up to the time the money was paid to plaintiff. Dawson states that he received a letter from James to the effect that plaintiff would take $200 and settle her case against the railroad companies; that on the receipt of the letter he informed the attorney of the Louisville and Nashville Railroad Company of its contents; that the attorney thereupon gave him $200 to pay to plaintiff, and he and Krebs went to East St. Louis, found James, and the three went together to the house of plaintiff; that he heard all that took place there; that he had read the affidavits of James and Krebs as to what occurred at plaintiff's house and that the same are true. Krebs states that he, at the request of the attorney of the railroad company, went with Dawson to East St. Louis, and then with Dawson and James to the house of the plaintiff, and he confirms the statements of James as to what occurred, going over the particulars in detail.

Plaintiff also filed the affidavit of Cass A. Jones to the effect that he was injured in the riot at East St. Louis, April 9, 1886; that until recently he had a suit for the recovery of damages for such injury; that about September 18, 1889, the defendant in this suit paid him $4,500, in settlement of his claim; that James, the deputy sheriff, came to his house about the middle of July, 1889, and stated that the company wanted to settle his suit; that it would cost the company $700 or $800 to litigate the case, and that the company would rather pay him the amount and settle; that he declined to negotiate with James and referred him to his attorney; that James afterward told him that the attorney of the Louisville & Nashville Railroad Company employed him to get him to settle. The court allowed the motion of defendants and entered judgment in favor of plaintiff and against defendants for the sum of $200 and costs; also entered satisfaction of the judgment; to which plaintiff excepted and brings the case to this court by appeal.

Mr. M. MILLARD, for appellant.

Messrs. J. M. HAMILL and W. S. FOREMAN, for appellees.

REEVES, P. J.   Three grounds of reversal of the judgment of the Circuit Court are urged.   The first is that the affidavits filed in support of the motion for judgment and against it, having disclosed a controversy in regard to the compromise of the plaintiff's cause of action, the court should have required the defendants to plead the agreement upon which the motion was based, and thus make an issue which could have been submitted to a jury.   This contention assumes that the agreement for the entry of judgment should be considered a release of plaintiff's cause of action.   This assumption does not seem to us to be well founded.   Certainly the terms of the agreement do not warrant such an assumption.   It might be contended that the agreement by a fair implication was a release of her cause of action except as to the amount for which the judgment should be entered.   But we fail to see how the defendants could have framed a plea upon the agreement as it stands that would have presented any triable issue upon the motion of defendants based upon the agreement.   The court could properly inquire, first, whether plaintiff had executed the agreement, and this being established, if it was claimed that the agreement had been obtained by fraud, the court might investigate that question and also the further question whether plaintiff, under the law, could make such agreement.   When it was determined by the court that plaintiff executed the agreement and that she had the legal power to make it, and that it was not obtained by fraud, nothing remained but to enter judgment in accordance with the terms of the agreement.

The second ground of reversal is that, conceding that the question was properly disposed of on motion, the court erred in not finding that the agreement was obtained by fraud, and therefore not binding on appellant.   The statements of appellant in her affidavit which tend to show that she was overreached in the negotiation which resulted in her signing this

agreement for judgment for $200, are directly contradicted by James, Dawson and Krebs. We have carefully examined all the affidavits and are not able to say that the appellant was induced to enter into the agreement by fraud. Much that plaintiff claims that James said to her, was the mere expression of his opinion, and such expressions ordinarily do not amount to fraudulent representations, particularly when these opinions are as to matters of law. American Ins. Company .v. Crawford, 7 Ill. App. 29; Fish v. Cleland, 33 Ill. 238.

The remaining ground upon which appellant seeks to reverse the judgment of the Circuit Court is, that plaintiff had not the power to make the agreement. In support of this proposition, appellant relies upon Sec. 83, Chap. 3, Starr & Curtis, p. 226. This section requires an administrator to secure an order of Probate Court, authorizing him to settle or compound claims due the estate, before he can legally proceed to do so. Does this section apply to cases like the one at bar? As we construe the statute under which this suit is brought, the claim sought to be enforced here, is not a debt due to the estate. When recovered, the amount of the recovery does not become assets in the hands of the administrator to be distributed, as the other assets of the estate, " but the amount recovered shall be for the exclusive benefit of the widow and next of kin of such deceased person." The creditors of the estate of the deceased have no interest whatever in the amount of such recovery. Section 83 of the statutes in relation to the administration of estates, is applicable alone, as we view it, to claims due the estate, and which, when collected, belong to the estate, as assets, applicable to the payment of debts of the estate. As to the power of the plaintiff to settle the amount of her recovery as administratrix in this case, the case of Henchey, Adm'x, v. City of Chicago, 41 Ill. 136, seems to be conclusive. In that case it is said : " Neither can we agree with appellant's counsel in the position that the plaintiff had no power to make the stipulation by which the suit was dismissed. The statute vested in her as administratrix, the right of action and the legal title to whatever damages were recoverable. This, of necessity, gave her the legal

right to control the prosecution and disposition of the suit. Whether the children, who, with herself, were interested in the distribution of whatever damages might have been recovered, can call her to account for any error of judgment she may have committed in making settlement, is to be decided when they make the attempt."

This decision is binding upon us until overruled by the Supreme Court, or until the Legislature shall change the statute. The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*