GARRETT et al. v. BOEING et al.

(Circuit Court of Appeals, Sixth Circuit. May 13, 1895.)

No. 197.

JUDGMENT—COLLATERAL ATTACK—PROBATE COURT.

When a petition for administration has been presented to a parish court in Louisiana, containing a representation of all facts necessary to confer jurisdiction to grant administration to the public administrator and decree the sale of property to pay debts, and such court, having power to inquire into the facts, and in the regular exercise of its jurisdiction, has made a decree granting administration and directing a sale, such decree cannot be questioned collaterally, either on the ground that the succession was not vacant, but had been assumed by the heirs by a tacit acceptance, or that the decedent died in another parish, or that there were no debts, or that no notice of the proceedings was given to the parties interested.

Appeal from the Circuit Court of the United States for the Northern Division of the Western District of Michigan.

This was a suit by Martin Alonzo Garrett and others against Marie M. Boeing and others to impress a trust upon the legal title to certain lands and for an accounting. The circuit court sustained a demurrer to the bill. Complainants appeal. Affirmed.

This case was argued and submitted with Hodge v. Palms (No. 232) 68 Fed. 61; McCants v. Land Co. (No. 233) Id. 66; Morancy v. Palms (No. 234) Id. 64; and Fletcher v. McArthur (No. 235) Id. 65,—cases in many respects of a similar character.

By the act of cession from France to the United States of the territory of Louisiana, in 1803, it was stipulated that the United States should give protection to the property rights of the citizens of the territory. For the purpose of carrying out this stipulation, congress passed an act providing for the appointment of a board of commissioners to ascertain what land claims covered by the treaty were just and valid. It happened that more claims were allowed and certified than there were lands to which they were applicable. The present suit involves one of such claims as remained unsatisfied, and dates in its origin as early as 1789. The suit was brought by a bill in equity filed in the Northern division of the circuit court of the United States for the Western district of Michigan. The complainants, by the averments of their bill, set forth in substance the following state of facts: That in the year 1810 one Joshua Garrett was the owner of an inchoate land claim in the former parish of Opelousas, in the state of Louisiana, comprised within the present parish of St. Landry, for 1,361 acres of land, which claim was entered by the commissioners for the Western district of Louisiana in their report of April 6, 1815, and, with other claims embraced in said report, was confirmed by an act of congress approved April 29, 1816. That said Joshua Garrett died possessed of that claim about the year 1812, in the parish of St. Mary's, in Louisiana, his domicile being in that parish, and leaving as his heirs at law two sons and one daughter; and that at the time of his death said Joshua Garrett owned a considerable amount of real estate and personal property situated in the said parish of St. Mary's. That there is no record in that parish of the settlement of his estate, but that by the law of Louisiana the heirs of the decedent were immediately upon his death seised and possessed of all his estate, subject only to their right to renounce the succession or the right of creditors to require an administration. That such renunciation is not presumed, but must be made by a formal act before a notary. Their acceptance, however, may be evidenced by any act of the heirs indicating their intention to exercise ownership over the ancestor's property; and that, after the acceptance by the heirs of the succession of their ancestor, no administrator can lawfully be appointed to administer thereon. That, immediately after the death of the said Joshua Garrett, his heirs took possession of all his real estate and of his other effects capable of being reduced to possession, and thereafter used, controlled, and disposed of the same as owners thereof. The

bill then proposed to deraign title to the land claim from the heirs of the said Joshua Garrett to the complainants in this suit, and goes on to state that for reasons not involving fault on the part of the said Joshua Garrett, or of the persons claiming under him, the said land claim remained unlocated and unsatisfied, and without provision for its satisfaction, until the passage by congress of the act approved June 2, 1858, entitled "An act to provide for the location of certain confirmed private land claims in the state of Missouri and for other purposes," by which act it was provided, in section 3: "That in all cases of confirmation by this act, or where any private land claim has been confirmed by congress, and the same, in whole or in part, has not been located or satisfied, either for want of a specific location prior to such confirmation, or for any reason whatsoever, other than a discovery of fraud in such claim subsequent to such confirmation it shall be the duty of the surveyor general of the district in which such claim was situated, upon satisfactory proof that such claim has been confirmed, and that the same, in whole or in part, remains unsatisfied, to issue to the claimant or his legal representatives, a certificate of location for a quantity of land equal to that so confirmed and unsatisfied; which certificate may be located upon any of the public lands of the United States subject to sale at private entry at a price not exceeding $1.25 per acre: provided, that such location shall conform to legal divisions and subdivisions." And in section 4: "That the register of the proper land office, upon the location of such certificate, shall issue to the person entitled thereto, a certificate of entry upon which, if it shall appear to the satisfaction of the commissioner of the general land office that such certificate has been fairly obtained, according to the true intent and meaning of this act, a patent shall issue as in other cases;" and that no limit of time was fixed for the presentation of claims under said act for such certificates of location. That during the lapse of time between the origin of said inchoate claim, its confirmation, and the provision for its satisfaction in the act of congress above quoted, many of those interested therein had died, and their heirs or legal representatives with respect to said land claim, many of whom were minors, as well as the survivors among those originally interested, had become widely scattered, and had, by reason of said delay, lost all hope of satisfaction for their said claims, and that neither the complainants nor any of those interested in said land claim, who were alive June 2, 1858, knew of the existence of said claim or of the passage of the act of 1858, or of their rights under the said act, until within 18 months last past; and that neither the surveyor general for the district of Louisiana in office from June 2, 1858, to February 6, 1861, nor his next successor, appointed August 16, 1869, nor any of his successors, ever took any steps to apprise the said legal representatives of their said rights, it being the practice to issue certificates of location, under said act, only upon application therefor; and that neither these complainants, nor any of the persons from whom they derive title to their interests in said land claim, ever applied for or received any certificate of location under said act of 1858, or other thing in satisfaction of said claim or any part thereof. That in the year 1872 one Daniel J. Wedge induced the public administrator of the parish of La Fayette, in the state of Louisiana, to file his petition in the parish court of that parish, by Wedge, his attorney, alleging that the estate of Joshua Garrett was vacant; that it consisted of the confirmed but unsatisfied land claim above referred to, and that it was less than $500 in value; and praying to be appointed administrator thereof, and for an inventory and sale of the same, under the laws of Louisiana regulating the administration of vacant estates of less than $500 in value; and that such proceedings were had that on the 1st day of August, 1872, the judge of the parish court, in pursuance of said petition, issued an order appointing the said public administrator to be administrator of said estate, and directing an inventory and sale of the property which might be found to belong thereto, to pay debts. That the inventory was returned August 2, 1872, and the property sold on the 29th day of that month in accordance with the order, at which sale Wedge purchased the said land claim for the sum of forty dollars, which was wholly consumed in the payment of the costs and expenses of administration, no other debts being shown to exist. That no notice was given of the application for the appointment of the administrator or of the sale of said property, nor of the order appointing the administrator and directing the

sale. The proceedings thus stated fully appear from a copy thereof which was annexed to the bill. Various provisions of the laws of Louisiana in reference to the administration of successions are set forth in the bill, the material parts of which are stated in the opinion. It is further stated in the bill that Wedge, claiming to be the legal representative of Joshua Garrett by virtue of the above-mentioned proceedings, applied to the surveyor general of the United States for the district of Louisiana for certificates of location in satisfaction of the said land claim under the said act of June 2, 1858, and that the said surveyor general prepared such certificates of location on the 2d day of June, 1879. The following is the form of one of such certificates of location and of an indorsement thereon by the surveyor general:

"No. 366A.   Act of June 2nd, 1858.   Acres, 80.
"Surveyor General's Office.
"New Orleans, La., June 2, 1879.

"I hereby certify that by the act of congress approved April 29, 1816, entitled 'An act for the confirmation of certain claims to land in the Western district of the state of Louisiana and in the territory of Missouri,' the claim of Joshua Garrett, entered as No. 44, class B, in the report dated April 6th, 1815, of the commissioners for the Western district, state of Louisiana, is confirmed to Joshua Garrett for 1,361 12/100 acres of land, of which there remains unsatisfied the quantity of 1,361 12/100 acres, which quantity the said claimant is entitled to locate, pursuant to the provisions of the third section of act of congress approved June 2, 1858, entitled 'An act to provide for the location of certain confirmed private land claims in the state of Missouri, and for other purposes.' Now, therefore, be it known that, on surrender of this certificate to the register of any land office of the United States, the said Joshua Garrett, or his personal representative, shall be entitled to locate, in part satisfaction of said claim, the quantity of 80 acres 'upon any of the public lands of the United States subject to sale at private entry, at a price not exceeding one dollar and twenty-five cents per acre, provided that such location shall conform to legal divisions and subdivisions.'

"O. H. Brewster,
"**Surveyor General, District of Louisiana.**"

The indorsement:

"Surveyor General's Office.
"New Orleans, La., June 2d, 1879.

"It is hereby certified that, in pursuance of evidence on file and of record in this office, D. J. Wedge is the legal representative of Joshua Garrett, the deceased confirmee, and as such is authorized to locate the within certificate.

"O. H. Brewster,
"Surveyor General of Louisiana."

Upon the certificates being forwarded by the surveyor general to the commissioner of the general land office, he authenticated the same as follows:

"General Land Office.
"Washington, D. C., June 14, '79.

"The foregoing certificate or script, having been lawfully issued by the surveyor general of Louisiana, is receivable, according to its terms, at any land office in the United States for the location, subject to entry at private sale and to which no adverse right exists.   J. M. Armstrong,
"Acting Commissioner."

That the evidence referred to in said indorsement consists solely in the record of said succession proceedings. Thereupon the said certificates were delivered to Wedge. That one Wilhelm Boeing, on July 17, 1880, offered the said certificates of location at the United States land office at Marquette, Mich., for location upon the lands involved in this suit, and the said certificates were received by the register of the said land office in payment for said lands. That patents were issued by the United States on the 30th day of December, 1881, conveying the said lands to said Boeing, which patents recited the provisions of the act of congress of June 2, 1858, and set forth that they were issued in conformity with said act, in full satisfaction of the unlocated and unsatisfied claim of Joshua Garrett, and stated that the locator

was the assignee of the legal representative of the said Garrett. The bill then shows conveyances of part of said lands to some of the defendants in the case, and the inheritance of other parts thereof by the other defendants, upon the death of said Wilhelm Boeing, on January 10, 1890. That the defendants, claiming title to the lands under said locator, now hold possession, or have at some other time entered upon and held possession, of some part of the lands hereinbefore described, and that each of them, in person or by their agents, has removed, or authorized to be removed, the timber or other valuable products from the lands of which they now have possession, or have sold and have received large sums of money from the sale thereof, and from the rents and profits arising from said lands. That the value of the timber or other products so cut and removed largely exceeds the sum of $2,500. That all the aforesaid transactions, from the beginning of the succession proceedings in the parish court of La Fayette parish to the cutting and disposal of the timber and the reception of the rents and profits from the lands, were carried on without the knowledge of the complainants, or any person from whom they claim title. That complainants were wholly ignorant of the same, and of their rights in the premises, until the fall of the year 1889, when some of them, learning that certificates of location had been issued in satisfaction of said claim, made investigations respecting the claim and their rights thereunder. That the persons through whom they derive their title were widely scattered, and their residences unknown to complainants. Whereupon the facts were ascertained, the residences of the several complainants discovered, and their co-operation secured, and thereupon they filed their bill of complaint. They allege that the pretended succession proceedings in said parish of La Fayette and the sale therein made of the said land claim of Joshua Garrett are void, of no effect, and vested no title in said Wedge, for the following reasons: (1) Because said claim was not assets of the estate of the said Joshua Garrett, but the property of his descendants, whose estate the complainants now have; (2) because the parish court of the said parish of La Fayette was without jurisdiction to appoint an administrator upon the estate of the said Joshua Garrett; (3) because the said pretended appointment and sale were not preceded by the orders and publications required by law; and (4) because said Daniel J. Wedge could not lawfully purchase at said pretended sale. And they further charge that the said Wedge, by virtue of the said proceedings, became a constructive trustee for the legal representatives of said Joshua Garrett in respect to said claim, and that the several respective and successive assignees, down to and including the defendants, had notice of the said trust, and are chargeable by reason thereof. They pray that they may be adjudged to be the true legal representatives of the said Joshua Garrett. That the several defendants may be adjudged to hold the lands now respectively held by them in trust for the complainants, and to convey the said lands. That the several defendants may be restrained and enjoined from selling or making any claim of title to said lands, and from entering thereon and from in any manner intermeddling therewith. That an account may be taken of the timber and other products removed from said lands, and of the value thereof, and of the amounts received from rents and profits, and that the defendants may be decreed to pay the complainants such value and amounts, with interest. The specific character of the proceedings in the parish court of La Fayette parish, as shown by the exhibits attached to the bill, is more fully stated in the opinion of the court. To this bill the defendants demurred, and assigned as special grounds for their demurrer, among others, the reasons discussed in the opinion. The bill was amended during its pendency in the court below, but those amendments did not make any change in the statement of the facts material to be stated, in the view which the court takes of the case upon this appeal. The circuit court sustained the demurrer, and ordered the bill to be dismissed, upon the ground, as appears from the memorandum of its opinion sent up with the record, that, although the bill avers that Joshua Garrett died in St. Mary's parish, and that was the parish of his domicile, while the proceedings were in the parish of La Fayette, yet that said parish court of La Fayette parish found that said Garrett died in La Fayette parish, and upon the further ground that the claim of the complainants is a stale claim, and barred by laches. From the decree dismissing the bill the complainants appeal.

Barbour & Rexford and Robert B. Lines, for appellants.

Jas. T. Keena (Don M. Dickinson and Henry M. Duffield, of counsel), for appellees.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

Having stated the case as above, SEVERENS, District Judge, delivered the opinion of the court.

The complainants seek to maintain their suit upon the theory of a constructive trust cast upon the legal title, which they admit to be in the defendants, by the fact that Wedge obtained the land claim of their ancestor, Joshua Garrett, by means of a fraud upon those who had inherited the claim from him, which trust, it is alleged, attached to the lands upon the issuance of the patent by reason of the fact that the successive assignees from Wedge, to and including the defendants, took the claim or the products of it with notice of the trust. The soundness of this deduction is controverted by the defendants.

We shall not stop in this case to examine the sufficiency of the grounds, in the abstract, upon which this proposition is based, but, for the purposes of our decision, will assume that, if the allegations of law and fact upon which it rests are made out, the consequences claimed would follow. The complainants deny the validity of the proceedings in the parish court of La Fayette parish in the matter of Garrett's succession. The substance of the argument made in support of the attack made upon the proceedings of the parish court of Louisiana consists in these propositions: First, that the court was without jurisdiction, because the succession of Garrett was not vacant; second, that it had not jurisdiction, because, as they allege, Garrett did not die in, nor was he, at the time of his death, domiciled in, that parish; third, that there was no jurisdiction, because there were no debts against the succession; and, fourth, because, if in other respects the court had jurisdiction, it was not lawfully exercised as against the heirs of Garrett, for the want of notice to them of the contemplated proceedings.

We will answer these propositions in their order as thus stated.

1. It is insisted that the acceptance which the bill alleges the heirs of Garrett made of his succession upon his death displaced all authority of the parish court to appoint an administrator, or in any manner deal with the property of the succession. The provisions of the law of Louisiana upon which this result is claimed to ensue, as well from the first as from the second of the propositions above stated, are found principally in the following articles of the Revised Civil Code of that state of 1870:

"Art. 871. (867.) Succession is the transmission of the rights and obligations of the deceased to the heirs.

"Art. 872. (868.) Succession signifies also the estates, rights and charges which a person leaves after his death, whether the property exceeds the charges or the charges exceed the property, or whether he has only left charges without any property.

"Art. 873. (869.) The succession not only includes the rights and obligations of the deceased, as they exist at the time of his death, but all that has ac-

crued thereto since the opening of the succession as also the new charges to which it becomes subject.

"Art. 874. (870.) Finally, succession signifies also that right by which the heir can take possession of the estate of the deceased, such as it may be."

"Art. 934. (928.) The succession, either testamentary or legal, or irregular, becomes open by death or by presumption of death caused by long absence, in the cases established by law."

"Art. 940. (934.) A succession is acquired by the legal heir, who is called by law to the inheritance, immediately after the death of the deceased person to whom he succeeds.

"Art. 941. (935.) The right mentioned in the preceding article is acquired by the heir by the operation of the law alone, before he has taken any step to put himself in possession, or has expressed any will to accept it."

"Art. 946. (940.) Though the succession be acquired by the heir from the moment of the death of the deceased, his right is in suspense, until he decides whether he accepts or rejects it.

"Art. 947. (941.) The heir, who accepts, is considered as having succeeded to the deceased from the moment of his death, not only for the part of the succession belonging to him in his own right, but for the parts accruing to him by the renunciation of his co-heirs in the succession of the deceased."

"Art. 987. (981.) The effect of the acceptance goes back to the day of the opening of the succession."

But the rights secured by these provisions are subject to the general power of the probate court having jurisdiction over the succession. As we shall hereafter see, whether those powers are rightly exercised in the particular case is a question to be determined in that case by challenge in that court or in some other to which an appeal may lie.

By article 988 of the Revised Civil Code, it is declared that the acceptance by the heir may be either "express or tacit." "It is express when the heir assumes the quality of heir in an unqualified manner, in some authentic or private instrument, or in some judicial proceeding. It is tacit, when some act is done by the heir, which necessarily supposes his intention to accept, and which he would have no right to do but in his quality of heir." Assuming, what probably could not be conceded, that the effect of an express acceptance would preclude the exercise of jurisdiction by the parish court over the succession, it is to be observed that the bill in this case does not allege any formal or express acceptance by the heirs, but alleges what under the Code would amount to a tacit acceptance; that is to say, one to be implied from acts in pais. It was a question of fact whether such acceptance had taken place or not. The power to inquire into the facts and determine whether the succession had been accepted was vested in the parish court. It would be absolutely necessary that the authority to judicially determine such a question should be vested in some court, and, by the system established in every state in the Union, Louisiana among them, such authority is devolved upon the probate court, by whatever name called in the respective states. The failure to vest authority over such questions would leave them open to uncertainty, and to contest at the instance of anybody and upon any occasion where it might be for his interest to bring on a dispute about the fact. The petition presented to the parish judge contained a representation of every fact necessary to confer jurisdiction. It was so held in Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369, where the peti-

tion in the proceedings brought collaterally under the considera-
tion of the court was in the same language as the petition now
being considered. An examination of the constitution, statutes,
and judicial decisions of Louisiana shows that full and exclusive
jurisdiction of the opening and settling of successions within the
state is conferred upon the parish courts, and that the powers vest-
ed in those courts are substantially coextensive with those general-
ly exercised by the probate courts in other states. The parish
judge is the judge of the probate court, and the court is one of gen-
eral jurisdiction of all matters relating to the estates of deceased
persons. It is alleged in the bill that the land claim in question
was part of the succession of Garrett.

The petition of the public administrator of the parish repre-
sented that Garrett "departed this life in said parish many years
since, leaving some property, consisting of an old deferred land
claim against the United States, No. 44, of date 1789." "That said
property should be inventoried, appraised, and sold according to
law, and that petitioner is entitled to the administration of the
said estate, being less than $500 in value." The petitioner there-
upon prayed that he might be ordered to take charge of the estate,
that an inventory might be made, the property sold according to
law to pay debts, that an attorney might be appointed to represent
the absent heirs of said estate, if any there were, and that a com-
mission issue to the sheriff to sell the property. On this petition
the parish court ordered that after 10 days' notice, if there was no
opposition thereto, the public administrator take charge of and
administer the estate, that the property be inventoried and ap-
praised, that W. C. Crow be appointed to represent the absent heirs,
that in due time the property be sold for the purpose of paying
debts and settling the estate, and that a commission issue to the
sheriff to sell it. Crow filed an acceptance of the appointment of
attorney for absent heirs, and waived citation and service. The
property, consisting of the said land claim, was appraised by the
legally appointed appraisers at $40, and was sold by the sheriff at
public auction to Wedge for the same sum. We cannot doubt that,
for the purpose of testing the jurisdiction of that court, the fact
that the succession was vacant was conclusively established by the
determination of the order appointing an administrator. This sub-
ject will be further discussed in dealing with the next, to which
it is closely allied.

2. The next objection to the validity of the proceedings is that
the parish court of La Fayette parish had no authority to appoint
an administrator, because, as it is alleged, Garrett died in St. Mary's
parish, and not in La Fayette. But the petition, as we have seen,
stated that he died in La Fayette parish. That, too, was a ques-
tion of fact. It might depend on disputed testimony. By whom
and when should such a question be determined? Manifestly, by
that parish court of Louisiana to whom regular application for ad-
ministration should first be made. Suppose that court, upon an
allegation that the deceased died in that parish, so finds upon in-
quiry into the facts, and proceeds to administer the estate. Would

it be competent to reopen the question by an application to the parish court of an adjoining or other parish, and try it over again, upon an allegation that the question of the decedent's domicile was not rightly decided in the parish proceedings? And may that question again be decided by another judge upon the evidence that shall now be adduced? If that can be done, the second judgment is no more conclusive than the first. The question could be tried over again in every parish in the state, with the possibility of as many different conclusions.

The laws of Louisiana, by certain peculiar additional safeguards, lessen the danger of occasional hardship resulting from the lack of notice by providing, as they do by articles 607 and 611 of the Code of Practice, that, in addition to the right of appeal, an action of nullity may be brought in the same court within a prescribed time against the judgment, where it has been obtained by fraud or ill practices by the party procuring it; and by providing for the appointment by the court of an attorney to represent the absent heirs (Rev. Civ. Code, arts. 1210,1211), and by awarding him fees for his services (Id. art. 1219), and thereby making him responsible to any party suffering by his want of diligence.

We think the law is settled in Louisiana, as well as elsewhere, that a collateral attack on a judicial determination of this character cannot be permitted. The supreme court of Louisiana, in its decisions relating to the character of the local probate jurisdiction and the conclusiveness of the judgments thereof when indirectly brought in question, very clearly and positively affirms the rule above stated, and which is maintained in the cases hereinafter cited from the reports of the supreme court of the United States. The cases are very numerous, and we cite only a few of the more recent: Sizemore v. Wedge, 20 La. Ann. 124; Woods v. Lee, 21 La. Ann. 505; Duson v. Dupre, 32 La. Ann. 896; Webb v. Keller, 39 La. Ann. 58, 1 South. 423; Linman v. Riggins, 40 La. Ann. 761, 5 South. 49; Gale v. O'Connor, 43 La. Ann. 717, 9 South. 557; Grevemberg v. Bradford, 44 La. Ann. 400, 10 South. 786; Succession of Theze, 44 La. Ann. 47, 10 South. 412.

It is not necessary to canvass all these cases. It will be sufficient to refer to two of recent date, which state the result of the previous decision, so far as they apply to the present case. In Duson v. Dupre, 32 La. Ann. 896, an action was brought by the curator of a succession, and the attorney for the absent heirs thereof, to recover land belonging to it. The plaintiffs derived their authority from the parish court of St. Landry. The defendants alleged that their appointment was a nullity, because the decedent whose succession they were appointed to represent was not a resident of St. Landry, but resided in the parish of Orleans. They also alleged another reason for the invalidity of the appointment, a reason which is relied upon here, namely, that the decedent left heirs in Louisiana, and so the estate was not vacant. We say it was the same reason, because there the law raised the presumption that the heirs had accepted the succession, while here the bill alleges that they did so. The district court held these defenses to be good. But the supreme court

reversed the judgment, holding neither of them to be good, saying that:

"The parish court of St. Landry had probate jurisdiction, and was exclusively competent to grant and issue letters of administration in all successions properly opened in that court. Defendants contend that this succession was not properly opened in that court, for the reasons urged in their exceptions. This denial presents a question of fact; that the deceased was not a resident of this parish; and that, having left heirs who were residents of this state, his succession was not vacant so as to necessitate or justify the appointment of a curator. * * * These questions can be looked into and adjudicated upon only in a direct action before the same court, or before the tribunal now vested with original probate jurisdiction in the parish of St. Landry. No principle of our jurisprudence is more firmly established than the following: 'Letters of administration make full proof of the party's capacity until they be revoked. They must have their effect, and the regularity of the proceedings on which they issued cannot be examined collaterally.' This rule was laid down in the early days of our jurisprudence, and has been sanctioned, confirmed, and consecrated by an unbroken line of decisions of this court down to the present day."

This case is cited and quoted in Simmons v. Saul as an important one in the exposition of Louisiana law upon the subject in hand, and the statement of the doctrine therein contained was approved as correct. In the recent case of Grevemberg v. Bradford, 44 La. Ann. 400, 10 South. 786, the supreme court had before it a case in many respects like the present. It was a petitory action by the heirs of one who had held a like confirmed land claim in Louisiana to recover lands which had been located by one who derived his title to the claim through almost exactly similar proceedings to those which took place in Garrett's succession. Some of the facts differed, and so the case cannot be said to be exactly analogous, but in deciding it the court referred to Duson v. Dupre, supra, quoted the language thereof as above, and said:

"That decision is but the reannouncement of what is the settled jurisprudence of this court. * * * Evidently, had Duson, curator, made a sale of the property of the Le Blanc succession in the parish of St. Landry, and the heirs had contested the validity of the title conferred on the purchaser, who, like the present defendant, was a stranger to the succession, this court, acting on the authorities therein cited, would unquestionably have denied their action, and affirmed the validity of the sale."

The case supposed in this extract from the opinion of the court presents exactly the case now before us. As was said in Simmons v. Saul, there are many cases in the Louisiana Reports where objections of the nature here taken were successfully maintained. But quite generally those were cases where the proceeding was either upon appeal or directly by a practice permitted by express statute, for the purpose of annulling or correcting the former judgment. No case has been referred to by counsel, nor have we been able to find any where it has ever been held that the jurisdiction can be questioned in such circumstances as these, and in a proceeding wholly independent and collateral.

We are bound to give the proceedings in the parish court the same credit as they would have in the state from which the record comes. The proceedings, the validity of which is here disputed, however open to question in the original jurisdiction to correction or annulment, were not subject to impeachment or collateral attack there, nor are

they here, it being shown that Garrett was a resident of and died in Louisiana, that the parish court had jurisdiction by law over the subject of successions, that a petition alleging the existence of the facts requisite to bring the particular succession within its juris- diction was presented to the parish court, and administration was thereupon ordered and a sale of part of the succession sold in pur- suance of its order. The suggestion of fraud in the procurement of the order of the court is of no avail. Such a charge can only be suc- cessful in the home jurisdiction. Christmas v. Russell, 5 Wall. 290; Hanley v. Donoghue, 116 U. S. 1, 6 Sup. Ct. 242; Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369. And we are required to give the same effect to the proceedings as if no such imputation were made upon them.

It is often said in the Louisiana cases that one relying upon the orders and decrees of the parish courts is bound to look to the juris- diction. Some of these cases are cited in complainants' brief. But the rule they state is only the one which lies at the foundation of all judicial proceedings, and, in applying it, those courts have always recognized the parish courts as courts of general jurisdiction in re- spect of the subjects committed in their charge. Upon the state- ment of the above rule, the question constantly remains, what are the matters relating to the jurisdiction, without the existence of which the court is without power to proceed? Doubtless the person whose estate is to be administered must have deceased. There must be a succession—that is, an estate—subject to the laws of the state, and susceptible of administration in the courts appointed for that purpose, and the property to be administered must be of that suc- cession. And the succession must not have been already judicially administered. In the latter case it is no longer in the succession, but has passed finally into new ownership. Probably there are other things of like general character, the existence of which might defeat the jurisdiction, but they are not subordinate matters of the kind here relied upon, each one of which has first or last been held to be not intrinsically essential, but subject to be ascertained by the judgment of the court in which the suit is brought. When thus ascertained, their status is thereby fixed, and the power of the court may be exercised upon them as having that status in fact. As to such matters, that which is stated in the petition, and accepted and acted upon by the court as true, becomes an indisputable part of the record.

3. Jurisdiction in the parish court is also denied because, as is alleged, there were no debts. It may be that that would have been a good reason why an administrator should not have been appointed, but it was not indispensable to the validity of the appointment. In the petition there was no direct averment that there were debts to pay, though it is implied in the prayer that the property might be sold to pay debts. Although, as a matter of pleading, such a de- fective allegation would not be technically sufficient, yet the subject was brought to the attention of the court, and its order followed the prayer. We do not, however, think it necessary to vindicate the order of appointment on this ground. It is not absolutely necessary

to an administration that there should be debts to be satisfied, and the estate is equally a succession whether there be charges upon it or not.

4. The contention that the appointment was made without any notice to the parties interested, either personal or by publication, is answered by the decision in Simmons v. Saul, where precisely the same objection was taken. The court in that case, after referring to article 1190 of the Code, which provides for the settlement of small estates in a summary manner, and which the court thought authorized the appointment of an administrator without notice, went on to say that, jurisdiction having attached by the presentation of a petition containing the necessary representations, the failure to give the notice, although required by law, or any other informality or defect in the subsequent proceedings, would not oust the jurisdiction, nor render the proceedings collaterally assailable; citing Grignon's Lessee v. Astor, 2 How. 319; McNitt v. Turner, 16 Wall. 366; Thompson v. Tolmie, 2 Pet. 157; Mohr v. Manierre, 101 U. S. 417; Comstock v. Crawford, 3 Wall. 396; Florentine v. Barton, 2 Wall. 210; Thaw v. Ritchie, 136 U. S. 519, 10 Sup. Ct. 1037.

For these reasons we think the decree of the circuit court is right, and it is therefore affirmed.