## AMERICAN CAR & FOUNDRY CO. v. ANDERSON.

(Circuit Court of Appeals, Eighth Circuit. January 24, 1914.)

No. 3927.

1. EXECUTORS AND ADMINISTRATORS (§ 11*)—PROBATE COURT—ADMINISTRATION OF ESTATE.

Under Rev. St. 1909, Mo. §§ 9, 56, 112, providing for the appointment of administrators, the probate court of St. Louis, though a court of limited jurisdiction, had jurisdiction to grant letters of administration and to settle the estate of a decedent killed by an accident in that city, whose entire estate consisted of a claim for wrongful death against his employer.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 25; Dec. Dig. § 11.*]

2. EXECUTORS AND ADMINISTRATORS (§ 24*)—APPOINTMENT—PUBLIC ADMINISTRATOR—"WITHOUT KNOWN HEIRS."

Rev. St. 1909, Mo. § 302, declares that it shall be the duty of the public administrator to take charge of the estates of all deceased persons in his county when such persons die intestate, without any known heirs, and when money, property, papers, or other estate are left in a situation exposed to loss or damage, and no other person administers the same, and when any estate of any person who dies intestate in the county or elsewhere is left in the county liable to be injured, wasted, or lost, and when the intestate does not leave a known husband, widow, or heirs in the state. Held, that the words "without any known heirs" mean without any heirs known to the public, the probate court, or the public administrator; and hence, where a decedent was killed, leaving a mother, brothers, and a sister, who, however, were not known to the public administrator, and a claim for wrongful death against defendant, and more than a fourth of the time limited for the enforcement of such claim expired

without any effort being made to collect the same when the public'administrator took charge of the estate, and substantially half of the time had expired when the claim was settled by him, sufficient facts existed to entitle him to take charge of the estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 132–140; Dec. Dig. § 24.*]

3. EXECUTORS AND ADMINISTRATORS (§ 29*) — COLLATERAL ATTACK'— ADMINISTRATOR—APPOINTMENT.

Where a public administrator was appointed to take charge of a decedent's estate, and the court had authority to grant the petition, a subsequent application by decedent's next of kin, to revoke the public administrator's authority prospectively, and without any application to revoke the administrator's authority to settle a claim for decedent's wrongful death, or to revoke the settlement made under such authority, the application was a collateral attack on the probate court's order of appointment, and, conferring authority to settle the claim, was therefore unsustainable.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 177–182, 1411; Dec. Dig. § 29.*]

4. EXECUTORS AND ADMINISTRATORS (§ 271*)—WRONGFUL DEATH—CLAIM FOR DAMAGES—ASSETS OF ESTATE.

A claim for damages for wrongful killing of decedent is not an asset of his estate, subject to the payment of debts.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1044–1051; Dec. Dig. § 271.*]

5. EXECUTORS AND ADMINISTRATORS (§ 87*)—RIGHT TO SUE—COMPROMISE.

An administrator or other person authorized to sue for damages for the death of another may, in general, compromise the claim without complying with statutes similar to Rev. St. 1909, Mo. § 242, providing that administrators, with the approval of the probate court, when unable to collect claims, may compromise the same, since such provisions are construed to refer to claims belonging to the estate proper, and not to the widow, heirs, etc., which claims may be compromised, not only without the consent of the beneficiaries, but against their affirmative protest.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 323, 384–392; Dec. Dig. § 87.*]

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by Albert R. Anderson, as administrators of Jacob Joseph Baudendistel, deceased, against the American Car & Foundry Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

William R. Gentry, of St. Louis, Mo. (M. F. Watts and Edwin W. Lee, both of St. Louis, Mo., on the brief), for plaintiff in error.

Henry B. Davis, of St. Louis, Mo. (John A. Harrison and Charles Erd, both of St. Louis, Mo., on the brief) for defendant in error.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge. The American Car & Foundry Company, hereafter called the defendant, has for some years been conducting a manufacturing plant at St. Louis, Mo. On or about December 22, 1910, Jacob Joseph Baudendistel was killed by an accident at the defendant's works. At the time of the accident he was employed by Wil-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

liam Eiler who had a contract with the defendant to put brake connections upon cars at a fixed rate per car. At the time of the accident the defendant carried a liability policy with the Travelers' Insurance Company by which it was agreed that the insurance company would assume the defense and make payment of claims against the defendant on account of the personal injury or death of employés while engaged in the service of that company. On December 24, 1909, a coroner's inquest was held upon the body of Mr. Baudendistel. There was introduced before it the report of the police department, from which it appeared that the deceased resided with his mother, Mary Baudendistel, at 3213 South Seventh street. At the same inquest Frank Biederman testified that he was the uncle of the deceased, and that the deceased lived at 3213 South Seventh street. The deceased was unmarried, but left his mother, Mary Baudendistel, a widow, and four brothers and one sister, namely, August Baudendistel, Julius Baudendistel, John Baudendistel, Frank Baudendistel, and Elizabeth Baudendistel. All of his brothers and sister were minors at the time of the death of Jacob Joseph Baudendistel, but August Baudendistel became of age March 28, 1910, and Julius Baudendistel, John Baudendistel, and perhaps Elizabeth Baudendistel are now of age. On April 16, 1910, Harry Troll, public administrator for the city of St. Louis, filed with the judge of the probate court of the city of St. Louis notice that he had taken charge of the estate of Jacob Joseph Baudendistel. The clerk of the probate court attached to a copy of this notice a certificate that the same was such copy, and that Harry Troll, public administrator, was duly authorized and empowered to secure and dispose of the property of the said deceased according to law, collect all moneys due said deceased, and in general to do and perform all other acts and things which are or hereafter may be required of him by law. This certificate was under the seal of the probate court. Troll published a notice of his having taken charge of the estate in the St. Louis Times on April 29 and on May 6, 13, and 20, 1910. On April 18, 1910, said public administrator filed in the probate court his inventory, in which he reported the only estate of the deceased consisted of a claim against the defendant for the killing of the deceased. June 6, 1910, he filed in the probate court an application in which it was alleged a copy of the testimony taken at the coroner's inquest was attached, and asked leave to compromise the claim against the defendant for $1,000, and on the same day the court ordered that he be so authorized. Thereupon the sum of $1,000 was paid, and the public administrator gave to the defendant a full release of this claim. The negotiations prior to the settlement were largely carried on by the Travelers' Insurance Company under its policy of indemnity.

On cross-examination, as a witness in this case, Harry Troll testified:

"Q. Did you interview Baudendistel's mother? A. Her existence was not known to the administrator until December, 1910. Q. Had you interviewed these brothers and sister that sit here in court? A. We had no information regarding them."

This evidence is in no wise controverted, except as the report of the police department, above referred to, contained the information that

the deceased resided with his mother, Mary Baudendistel, at 3213 South Seventh street, and Troll further testified upon this trial:

"Q. Had you seen the Coroner's inquest? A. Not personally—not myself, no."

About December 10, 1910, Mary Baudendistel, the mother, and August Baudendistel, the oldest brother of the deceased, who had become of age, filed in the probate court an application in which it was alleged that no administration had ever been regularly taken out upon the estate of the deceased; that notwithstanding that fact Harry Troll, public administrator, had unlawfully and wrongfully, and without notice to the applicants or either of them, and without any order of the probate court, taken charge of and begun the administration of the estate; that he had no authority of law whatsoever for so doing, and his acts and doings in the premises were and are wholly wrongful and unlawful, and that he had no authority in law whatsoever for entering upon said estate, none of the facts or circumstances existing authorizing him to take charge thereof, and asking that all authority, if any in him, to administer upon or enter into possession of the said estate be set aside and revoked. Thereupon the court revoked the authority of the public administrator, and appointed Albert R. Anderson administrator de bonis non. After said order of revocation the judge of the probate court approved a settlement with the public administrator, allowed him $25 for his services, and directed him to pay over $608.60 to Albert R. Anderson, administrator de bonis non and successor to public administrator.

Anderson brought this suit in the state court, as administrator of the deceased, to recover damages for the killing of his intestate. Anderson, as administrator, will hereafter be called the plaintiff. The case was removed from the state to the United States District Court, and resulted in a verdict for the plaintiff for the sum of $5,000, and the American Car & Foundry Company sued out this writ of error.

Upon the trial the defendant relied exclusively upon the accord and satisfaction heretofore referred to, and substantially the sole question raised upon this hearing was as to the validity of the release given by Harry Troll as public administrator.

The following, quoted from the Revised Statutes of Missouri of 1909, although published after, are the same as were in force at the time of the accident:

"Sec. 5425. * * * If there be no husband, wife, minor child or minor children, natural born or adopted as hereinbefore indicated, * * * then in such case suit may be instituted and recovery had by the administrator or executor of the deceased and the amount recovered shall be distributed according to the laws of descent, and such corporation, individual or individuals may show as a defense that such death was caused by the negligence of the deceased.

"Sec. 5426. When Representative may Sue.—Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured.

"Sec. 5427. Damages, by Whom Recovered—Measure of.—Damages accruing under the last preceding section shall be sued for and recovered by the same parties and in the same manner as provided in section 5425; and in every such action the jury may give such damages, not exceeding ten thousand dollars, as they may deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parties who may be entitled to sue, and also having regard to the mitigating and aggravating circumstances attending such wrongful act, neglect or default."

"Sec. 9. Letters, by Whom Granted.—The probate court, or the judge or clerks thereof in vacation, subject to the confirmation or rejection of the court, shall grant letters testamentary and of administration."

"Sec. 56. Proceedings to Compel Accounting in Cases of Resignation or Removal.—If the executor or administrator resign or his letters be revoked, it shall be the duty of his successor, or of the remaining executor or administrator, to move the court to compel the executor or administrator removed, or having resigned, to make final settlement; and on such motion, after due notice to such executor or administrator, the court having jurisdiction shall ascertain the amount of money, the quality and kind of real and personal property, and all the rights, deeds, evidences of debt and paper of every kind of the testator or intestate in the hands of such executor or administrator, or that came into his hands and remain unaccounted for at the time of his resignation or removal from office or revocation of his letters, and to enforce such order and judgment against such administrator or executor, and his sureties if they had due notice of the proceedings, or against either of them—first, for the amount of money specified in the judgment, by execution in the ordinary form; second, for all other estates, effects and papers described in the judgment or order, by attachment against the person or property of executor or administrator."

"Sec. 112. General Power of Court over Estate.—The court may, at any time, make such orders as the interest of the estate may require for the speedy collection of debts or the sale and distribution of personal property."

"Sec. 299. To be Elected, When—Oath and Bond—Ex Officio Public Guardian.—Every county in this state, and the city of St. Louis, shall elect a public administrator at the general election in the year 1880, and every four years thereafter, who shall be ex officio public guardian and curator in and for his county."

"Sec. 302. Duty of Public Administrator to Take Charge of Estates, When. —It shall be the duty of the public administrator to take into his charge and custody the estates of all deceased persons, and the person and estates of all minors, and the estates or person and estate of all insane persons in his county, in the following cases: * * * Second, when persons die intestate without any known heirs; * * * fourth, when money, property, papers or other estate are left in a situation exposed to loss or damage, and no other person administers on the same; fifth, when any estate of any person who dies intestate therein, or elsewhere, is left in the county liable to be injured, wasted or lost, when said intestate does not leave a known husband, widow or heirs in this state."

"Sec. 5429. Limitation of Action—Effect of Nonsuit.—Every action instituted by virtue of the preceding sections of this article shall be commenced within one year after the cause of action shall accrue."

"Sec. 303. Additional Powers, Duties and Remedies.—In addition to the provisions of this article, he and his securities shall have the same powers as are conferred upon, and be subject to the same duties, penalties, provisions and proceedings as are enjoined upon or authorized against executors and administrators, guardians and curators by articles 1 to 13, inclusive, of this chapter, so far as the same may be applicable. He shall have power to administer oaths and affirmations in all matters relating or belonging to the exercise of his office."

Articles 1 to 13 thus referred to define in large measure the duty of private as distinguished from public administrators and include the two following sections:

211 F.—20

"Sec. 101. Administrator to Collect Debts, Prosecute and Defend Suits, etc. —Executors and administrators shall collect all money and debts of every kind due to the deceased, and give receipts and discharges therefor, and shall commence and prosecute all actions which may be maintained and are necessary in the course of his administration, and defend all such as are brought against him."

"Sec. 242. Administrator with Approval of Court may Compound with Debtor.—Executors or administrators, with the approval of the probate court, may in all cases where they are unable to collect by law compromise any claim against any debtor of the decedent."

"Sec. 305. Notice, How and When Given—Penalty for Failure.—It shall be the duty of every public administrator immediately upon taking charge of any estate, except those of which he shall have taken charge under the order of the probate court for the purpose of administering the same, to file a notice of the fact in the office of the clerk of the probate court. If any public administrator shall fail to file the notice provided for in this section, he shall forfeit and pay to the persons entitled to the estate a sum not exceeding two hundred dollars, to be recovered before said court, on motion, and after reasonable notice thereof to said public administrator; and said court may, in its discretion, remove such public administrator from office."

"Sec. 308. Court may Order Him to Account to Successor, When—The probate court may at any time, for good cause shown, order the public administrator to account for and deliver all money, property or papers belonging to any estate in his hands to his successor in office, or to the heirs of said estate, or to any executor or administrator regularly appointed, as provided by law."

It is contended by plaintiff: First, that the public administrator had no authority to take charge of the estate under section 302 of the Missouri Statutes; second, that there was no power in the public administrator to compromise the claim, and especially without the consent of the beneficiaries.

[1] While the probate court of the city of St. Louis is, so far as appears, a court of limited jurisdiction, there can be no doubt that it had jurisdiction of the granting of administration upon and the settlement of the estate of Jacob Joseph Baudendistel. Whatever question may be raised as to the jurisdiction of the public administrator, none can be suggested as to the jurisdiction of the probate court.

[2] The power of the public administrator to take charge of the estate probably existed under the second, fourth, and fifth grounds specified in section 302 of the Revised Statutes of Missouri of 1909. What is meant by "when persons die intestate without any known heirs"? If the person left heirs, they must be known by some one, although they may not be known to be heirs of the deceased. In other words, the existence of any human being unknown to everybody is not conceivable. Manifestly "without any known heirs" means without any heirs known to the public, the probate court, or the public administrator. While the administrator cannot willfully blind himself to the existence of heirs, if he in fact knows of none, he can take charge of the estate. He was equally entitled to take charge of the estate under the fourth ground that the estate was "left in a situation exposed to loss or damage, and no other person" administered on the same. There was a short statute of limitations in Missouri, one year (section 5429). More than one-fourth of this time had elapsed when the public administrator took charge, and substantially half of it had expired before the settlement. The first effort made by the heirs to re-

move the public administrator was about December 10th, within about 12 days of the claim being wholly lost by the statute of limitations. Surely by this neglect, for whatever cause, of the heirs at law the claim was "exposed to loss."

For the same reason the public administrator had authority, under the fifth ground specified under section 302, but entirely aside from this question the contention here made is in a collateral proceeding.

[3] While the application to the probate court was to set aside and revoke the authority of the public administrator, the whole record shows that it was revoked prospectively and not retrospectively. No application was ever made to the probate court to revoke the authority to the public administrator to settle the claim or to revoke the settlement made under such authority. It is the settled law of Missouri that the authority of a public administrator to take charge of an estate cannot be assailed collaterally. Dunn v. German American Bank, 109 Mo. 90, 18 S. W. 1139; Leeper v. Taylor, 111 Mo. 312, 19 S. W. 955; Wetzell v. Waters, 18 Mo. 396; Richardson v. Busch, 198 Mo. 184, 95 S. W. 894, 115 Am. St. Rep. 472; Vermillion v. Le Clare, 89 Mo. App. 55.

In Dunn v. German American Bank, supra, the court said:

"Nor is there any doubt that the public administrator had authority under the statute to take charge of the estate of the decedent, and, besides his right to thus take charge of an estate cannot be questioned collaterally. Wetzell v. Waters, 18 Mo. 396; 1 Woerner, Adm'n, 397."

And in Leeper v. Taylor, supra, the court said:

"Even if the facts did not exist to justify him in taking charge of the estate, he would be the administrator until superseded by a duly appointed private administrator."

The public administrator probably had authority to take charge of the estate, and whether he had or not, he became administrator until superseded or otherwise removed. See Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369, 34 L. Ed. 1054, and the cases there referred to, namely, Comstock v. Crawford, 3 Wall. 396, 18 L. Ed. 34, and McNitt v. Turner, 16 Wall. 352, 21 L. Ed. 341; Garrett v. Boeing et al., 15 C. C. A. 209, 68 Fed. 51. It is claimed that if it be conceded that Troll was the de facto administrator of this estate, he had no power to compromise this claim, even with the approval of the probate court.

[4] First it is urged that the claim for damages was not a general asset of the estate subject to the payment of debts, and this is true.

The case of Pisano v. Shanley Co., 66 N. J. Law, 1, 48 Atl. 618, is cited. It is there said:

"There are decisions of our sister states holding that the administrator in actions of this sort is so purely a formal party that his release or discharge of the cause of action, without the consent of the beneficiaries, will not be permitted. It is not necessary to review the decisions on this subject."

The question was not expressly passed upon in that case. There is no explanation of what is meant by "will not be permitted." Not be permitted by whom? Did the court mean not permitted by the probate court having jurisdiction of the estate, or did it mean such a settlement might be collaterally assailed? The court wholly failed to cite any of

the alleged decisions of sister states so holding. None of them have been cited by the plaintiff, and we have not been able to identify them. If the New Jersey court meant such settlement would not be permitted by the probate court, the answer here is at once that the probate court did permit this settlement.

In Jeffries v. Mutual Life Insurance Company of New York, 110 U. S. 305, 4 Sup. Ct. 8, 28 L. Ed. 156, the court said:

"To commence and prosecute actions fairly includes the power to make such reasonable contracts in regard to compensation and the compromising of actions on doubtful claims as the circumstances of particular cases may justify. The fact of the enactment in Missouri of a statute, which went into effect November 1, 1879, Rev. Stat. of Missouri 1879, vol. 1, p. 37, § 242, giving power to an administrator to compound with a debtor, with the approbation of the judge of probate, does not imply that the power did not exist before without such approbation. This transaction occurred before such enactment. An administrator has general power, to dispose of the personal effects of his intestate, 2 Williams on Ex'rs (6th Am. Ed.) p. 998, and to compound a debt, if it is for the benefit of the trust estate. 3 Williams on Ex'rs, p. 1900, and note g2. And, even when statutes exist providing for compromises with debtors with the approval of a probate court, it is held that the right to compromise, which before existed, is not taken away, but may be exercised subject to the burden of showing that the compromise was beneficial to the estate. Wyman's Appeal, 13 N. H. 18; Chouteau v. Suydam, 21 N. Y. 179; Chadbourn v. Chadbourn, 9 Allen [Mass.] 173."

[5] It is quite uniformly held that the administrator or other person authorized to bring suit for damages for the death of another may compromise the claim without complying with such statutes as section 242 of the Revised Statutes of Missouri because such statutes have reference to the compromise of claims which belong to the estate proper, and not to the widow, heirs at law, and the like, and that such compromises may be made, not only where the beneficiaries do not consent, but where they affirmatively object. Hartigan v. Southern Pac. R. Co., 86 Cal. 142, 24 Pac. 851; Henchey v. City, 41 Ill. 136; Washington v. L. & N. Ry. Co., 136 Ill. 49, 26 N. E. 653; Washington v. L. & N. Ry. Co., 34 Ill. App. 658; Brinks Ex. Co. v. O'Donnell, 88 Ill. App. 459; Pittsburg, C., C. & St. L. Ry. Co. v. Gipe, 160 Ind. 360, 65 N. E. 1034; Greenlee v. Railroad Co., 73 Tenn. (5 Lea) 418; Stephens v. R. R. Co., 78 Tenn. (10 Lea) 448; Holder v. Nashville, C. & St. L. R. Co., 92 Tenn. 141, 20 S. W. 537, 36 Am. St. Rep. 77; Cotton Mills Co. v. Mullins, 67 Miss. 672, 7 South. 542; Cogswell v. Concord & M. Railroad Co., 68 N. H. 192, 44 Atl. 293; Parker v. Providence & S. Steamship Co., 17 R. I. 376, 22 Atl. 284, 23 Atl. 102, 14 L. R. A. 414, 33 Am. St. Rep. 869; Foot v. Ry. Co., 81 Minn. 493, 84 N. W. 342, 52 L. R. A. 354, 83 Am. St. Rep. 395; Flynn v. Chicago Great Western Railroad Co. (Iowa) 141 N. W. 401, 45 L. R. A. (N. S.) 1098.

Lewis v. McCabe, 76 Mo. 307, is relied on by plaintiff. That case must be considered in connection with McCabe v. Lewis, 76 Mo. 296. These cases were decided by a divided court. The majority held in effect that the public administrator was only authorized to take charge of property in his county at the time of the death of his intestate, and that the law did not contemplate that the public administrator should take charge of property as administrator de bonis non, which property had

already been administered. There is nothing in either of these cases which seems pertinent here.

Plaintiff also cites Voris v. C., M. & St. P. 172 Mo. App. 125, 157 S. W. 835, but it does not seem to have any bearing upon the question deemed of controlling character in this case.

The matters that have been referred to were properly pleaded and proven by the defendant, and at the close of all the evidence it moved for a directed verdict, which was overruled, but which in the view taken should have been sustained.

The case is therefore reversed and remanded, with directions to the District Court to set aside the verdict and grant a new trial.